Stanley M. BARTUS, Plaintiff-Appellant,

v.

Wisconsin DEPARTMENT OF HEALTH & SOCIAL SER-
VICES, DIVISION OF CORRECTIONS, Department of Proba-
tion & Parole and State of Wisconsin, Division of
Hearing & Appeals, Defendants-Respondents-
Petitioners.

Supreme Court

*No. 91–1769. Submitted on briefs May 26, 1993.—Decided
June 23, 1993.*

(Also reported in 501 N.W.2d 419.)

For the defendants-respondents-petitioners the cause was submitted by *Stephen W. Kleinmaier,* assis-

tant attorney general, and *James E. Doyle,* attorney general.

For the plaintiff-appellant the cause was submitted on the brief of *Stanley M. Bartus,* Schofield.

HEFFERNAN, CHIEF JUSTICE. This is a review of an unpublished, *per curiam* decision of the court of appeals reversing a circuit court order, dated June 19, 1991, which affirmed a decision of the Division of Hearings and Appeals holding itself to be without jurisdiction to vacate or void a facially valid circuit court order and revoking the alleged probation of Stanley Bartus. As grounds for dismissal, the court of appeals cited *sua sponte* the Department of Health and Social Services, Division of Corrections' (now the Department of Corrections) failure to comply with sec. 973.09(3)(b), Stats.,[1] which requires giving the trial court notice at least 90 days before the expiration of a probationer's term of the need to schedule a probation review hearing because the probationer failed to pay restitution.

The state raises three questions on appeal: (1) whether a court should be allowed to dismiss an action *sua sponte* without first permitting the parties to submit supplemental briefs; (2) whether the court of appeals

---

[1] Wis. Stats. § 973.09(3) provides in relevant parts:

(a) Prior to the expiration of any probation period, the court, for cause and by order, may extend probation for a stated period or modify the terms and conditions thereof.

(b) The department shall notify the sentencing court . . . of the status of the ordered payments unpaid at least 90 days before the probation expiration date. If payment as ordered has not been made, the court shall hold a probation review hearing prior to the expiration date, unless the hearing is voluntarily waived by the probationer with the knowledge that waiver may result in an extension of the probation period or in a revocation of probation. . . .

correctly interpreted sec. 973.09(3)(b) to require the DOC to provide the circuit court with notice prior to revoking a prisoner's term of probation; and (3) whether the Division of Hearings and Appeals acted arbitrarily and capriciously in concluding that it did not have jurisdiction to reverse or void a facially valid circuit court judgment. Bartus raises a fourth question, namely whether the order for probation and restitution imposed in 1988 is null and void as a matter of law because he had already completed a 1986 sentence of probation imposed for the same conviction.

That the court of appeals has the authority to dismiss an appeal *sua sponte* without the benefit of additional briefing is clear. In respect to the instant case, however, we conclude that the court of appeals wrongly dismissed the action on the basis of an erroneous interpretation of sec. 973.09(3)(b). We therefore reverse the decision of the court of appeals and consequently agree with the circuit court's judgment upholding the Division of Hearing and Appeals' finding that the Division was without jurisdiction to reverse or void a circuit court judgment. On remand, we direct the circuit court to determine whether Bartus's 1986 sentence of probation was stayed as a matter of law pending appeal upon his initial release from jail or alternatively that Bartus in fact served the sentence of probation during the pendency of that stayed appeal. If it is determined that he has already completed the sentence for the 1986 conviction we direct the circuit court to order Bartus discharged from probation.

Stanley Bartus was convicted on February 18, 1986, for twelve counts of operating as a seller without a permit in violation of sec. 77.52(12), Stats. On April 2, 1986, the circuit court sentenced Bartus to ninety days in the Marathon County Jail for counts 1–3 or post $5,000 cash

bond pending appeal, and to "thirty (30) days [on] each count consecutive" for counts 4–12. The court subsequently stayed the latter sentences and placed Bartus on two years concurrent probation for each of the nine counts. Bartus was remanded to the custody of the Marathon County Sheriff, served three days, and was released after family members delivered $5,000 cash to the county jail. Bartus moved for post-conviction relief and the circuit court issued an order dated May 15, 1986, to stay the sentences on all twelve counts pending the outcome of Bartus's appeal.[2] On November 17, 1987, the court of appeals issued an opinion reversing six of the counts because of insufficient evidence, and remanding for resentencing on the remaining six counts.

On April 12, 1988, Bartus filed a Petition for Writ of Habeas Corpus challenging the jurisdiction of the circuit court to impose a new sentence. Bartus objected to the resentencing on the ground that his initial term of probation from the 1986 conviction had never been stayed pending his appeal. Although the circuit court had issued an order staying the initial sentence, nothing had been issued to stay the term of probation imposed in lieu of that sentence. Bartus therefore asserted that the circuit court lacked the authority to resentence him after April 2, 1988, the date on which the initial term of probation allegedly expired.[3]

---

[2] Bartus challenges the validity of the appeal in part because no record exists of his having executed an appeal bond as required by Wis. Stats., § 969.01(2)(b) and § 969.09(2). We reject this contention on the ground that Bartus posted an equivalent $5,000 cash bond as required as a condition of his release pending appeal.

[3] In addition to the Habeas petition, the record indicates that Bartus has petitioned for writs of mandamus and supervisory writs, moved for a temporary restraining order to enjoin the state from proceeding with the restitution review hearing, and repeat-

Despite the pending writ, the circuit court, on April 13, 1988, resentenced Bartus to ninety days in the county jail for three of the remaining six counts. As for the other three counts, the circuit court sentenced Bartus to thirty days on each count to be served consecutively. The court stayed the sentence, placed Bartus on probation for two years, and ordered him to pay an undetermined amount of restitution as a condition of probation.[4] Bartus refused to pay restitution on the ground that the court was without jurisdiction to impose the 1988 sentence. Accordingly, the circuit court, on April 13, 1990, reviewed Bartus's probation and issued an order dated *nunc pro tunc* April 12, 1990, extending his term of probation for six months. On December 10, 1990, Bartus's probation agent requested that probation be revoked because of Bartus's continued failure to pay restitution.

Following a revocation hearing, the Division of Hearings and Appeals revoked Bartus's probation in an order dated January 4, 1991. Matthew J. Devlin, the hearing examiner, rejected Bartus's claim that the circuit court was without jurisdiction to impose the second sentence, reasoning that an agency does not have the authority to void an otherwise facially valid circuit court judgment or order. On appeal, the administrator of the Division of Hearing and Appeals affirmed the decision of the hearing examiner and concluded that Bartus's juris-

edly demanded the circuit court to issue attachments against the respondents in the Habeas proceeding.

[4] Although the court initially imposed an amount of restitution in excess of $108,000, the court later reduced this amount to $79 following a restitution review hearing. In addition to restitution, the court charged Bartus with $159 in court costs and a victim-witness surcharge of $60.

dictional arguments needed to "be directed to the courts through the appropriate appeals process."

On review of the agency determination, the circuit court for Marathon county affirmed the administrative decision that the agency lacked the authority to void a facially valid court order. Bartus appealed the circuit court determination, citing the same jurisdictional arguments that he had raised previously. Instead of confining its review to the issues presented, the court of appeals decided *sua sponte* that the Department had failed to comply with the statutory requirements in sec. 973.09(3)(b). The court of appeals therefore reversed the order of the circuit court and ordered Bartus discharged from probation.

According to the court of appeals, sec. 973.09(3)(b) requires the Department of Corrections [Department] to inform the circuit court at least 90 days prior to the expiration of a probationer's failure to pay restitution. The court considered sec. 973.09(3)(b) applicable in all cases in which a person on probation fails to make restitution before the expiration of his term of probation—regardless of whether the action is for extension or revocation of the person's probation. In the instant case, the Department bypassed the review hearing altogether and proceeded directly to the administrative revocation proceedings by issuing a probation hold against Bartus. While the Department properly held a probation review hearing at the time it sought Bartus's probation extension, the court of appeals concluded that the statute required the agency to conduct similar hearings for each subsequent extension or revocation. We granted the state's petition for review in order to remedy the court of appeals' alleged misapplication of sec. 973.09(3)(b).

Before discussing the proper application of sec. 973.09(3)(b), we first address whether the court of

appeals had the authority to raise the question of statutory interpretation *sua sponte* and subsequently to dismiss the action without permitting parties to file briefs on the newly raised question of law. We conclude that the court of appeals had the authority and we therefore hold that the court of appeals in this instance was acting within the scope of its authority to question the proper application of sec. 973.09(3)(b). Furthermore, we decline to adopt a *per se* rule requiring courts to seek additional briefing because we consider such a rule both unnecessary and unduly burdensome to the courts.

█ The state concedes that the court of appeals has the authority to raise a question of law *sua sponte*, citing a number of cases in which similar action was undertaken. *See, e.g., Cappon v. O'Day,* 165 Wis. 486, 491, 162 N.W. 655 (1917) ("the question is one of administration, not of power"); *Nightingale v. Barens,* 47 Wis. 389, 395, 2 N.W. 767 (1879); *Hartung v. Witte,* 59 Wis. 285, 290-92, 18 N.W. 175 (1884).[5] The state now urges this court to adopt a *per se* rule requiring the dismissing court to permit parties to file supplemental briefs before exercising authority. According to the state, such a rule would protect against surprise judgments and would ensure that courts are fully informed of the relevant arguments in respect to the newly raised question of law. For support, the state points to *State v. Weber,* 164 Wis. 2d 788, 476 N.W.2d 867 (1991), in which this court denied a

---

[5] One commentator, relied on by the state, concludes that the court's authority to consider matters *sua sponte* "is a reflection of one of the purposes of appellate review—justice for the parties." Allan D. Vestal, *Sua Sponte Consideration In Appellate Review,* 27 Ford. L. Rev. 477, 509 (1958-59). *See also State v. Weber,* 164 Wis. 2d 788, 794 n.5, 476 N.W.2d 867 (1991) (Abrahamson, J. dissenting) (citing cases).

defendant's motion for reconsideration on the ground that the court had limited its *sua sponte* considerations to the "issues" outlined in the petition for review. In its denial, the majority concluded that "the petition for review placed the defendant on notice of the issue before the court and, consequently, due process did not require that we request additional briefing." *Id.* at 790–91. The state interprets these preceding comments to indicate an intent on the part of this court to require additional briefing if, as is the case here, the court's *sua sponte* considerations relate to a newly raised issue, rather than an argument as occurred in *Weber.*

Although we agree with the general tenor of the state's argument regarding the desirability of permitting additional briefing if a court is to exercise this authority, we reject the state's proposal requiring the submission of briefs. In our denial of reconsideration in *Weber* the "argument-issue" distinction was relevant only insofar as the defendant argued that the court's actions had deprived him of adequate notice and thus violated his constitutional right to due process. In the instant dispute the state does not claim that the court of appeals acted in violation of the constitution. Instead, the state justifies its proposed rule on a presumption that the court of appeals would have been better informed and hence produced a more insightful decision had it permitted the parties to submit briefs discussing the proper application of sec. 973.09(3)(b).

We agree that briefs provide valuable guidance to courts grappling with the task of resolving difficult questions. We disagree, however, with the state's bold assertion that "almost all" of the arguments or issues raised by a court *sua sponte* involve difficult questions that require additional briefing. Many issues raised *sua sponte* relate to quite obvious legal defects for which

1072

additional briefs would simply delay the court's determination and increase legal fees without benefitting the decision-making process. We acknowledge the courts' abilities to identify correctly those matters calling for additional briefing and those within the authority of the court to correct without further assistance from the parties. Thus, we are not persuaded that the advantages of a *per se* briefing rule necessarily outweigh the burdens imposed on the efficient administration of justice.

Declining to adopt a *per se* rule requiring courts to permit the submission of additional briefs whenever an issue is raised *sua sponte,* we nevertheless emphasize this court's preference for requesting briefs whenever they might aid the court. The instant dispute is an example in which the issue raised *sua sponte* was neither jurisdictional nor procedural in nature and the court likely would have benefitted from the filing of additional briefs. Statutory interpretation is a complex task, requiring courts to weigh many variables before arriving at a balanced and reasonable construction of legislative intent. Unlike legal defects that can frequently be resolved without assistance from litigants, statutory interpretation is an area in which the courts usually should be willing to delay their determination until they have the assistance of briefs. The instant decision might not have required this review had the court of appeals permitted the parties to file supplemental briefs. We therefore urge the courts to exercise caution when determining an issue *sua sponte* without the assistance of supplemental briefs and to ask for briefs unless the matter is quite clear.

We turn to the question whether sec. 973.09(3)(b) mandates the notification of the sentencing court at least 90 days before a probationer's term expires as a precondition for revoking probation for failure to pay

1073

restitution. Addressing the question *sua sponte,* the court of appeals concluded that the notification requirements of sec. 973.09(3)(b) apply in all instances involving nonpayment of restitution and, therefore, the Department failed to comply with the statute's requirements in the case of Stanley Bartus. Consequently, the court of appeals ordered Bartus discharged from probation. We disagree with this interpretation of sec. 973.09(3)(b) and instead construe the notification requirements to apply only in cases involving probation extensions, not revocations as in the instant case.

The court of appeals rested its decision in large part on the mandatory language of sec. 973.09(3)(b): the trial court "shall" hold a "probation review hearing" before the probation expiration date if the probationer fails to pay restitution. In addition, the court noted that the required hearing "may [be] dispense[d] with . . . only if the probationer voluntarily waives the 'probation review hearing' with the knowledge that the waiver may result in an extension of the probation period or in a revocation of probation." According to the court of appeals, such language evinces a clear intent by the legislature to mandate a probation review hearing as a precondition to the Department of Corrections' authority to revoke, extend or otherwise alter a probationer's term because of restitution nonpayment.

Statutes are to be construed so as best to effectuate the plain meaning of their terms. In the event of ambiguity, however, it is the duty of this court to go beyond the statutory language and "to examine the scope, history, context, subject matter and object of the statute to discern the legislative intent." *State v. Timm,* 163 Wis. 2d 894, 898, 472 N.W.2d 593 (Ct. App. 1991). Insofar as the state and the court of appeals arrive at contrary but

reasonable interpretations of sec. 973.09(3), we find the statutory language to be ambiguous and therefore examine additional evidence to determine the statute's proper application. Based on the statute's legislative history and related provisions governing revocation generally, we conclude that sec. 973.09(3)(b) applies only to probation extension proceedings.

Section 973.09(3)(b), Stats., must be read *in pari materia* with other sentencing statutes that mandate various probation and restitution guidelines and procedures. For example, sec. 973.09 deals with all aspects of the sentencing process in respect to the imposition of probation and restitution; sec. 973.10 outlines methods for controlling and supervising probationers, including revocation of probation; and sec. 973.20 relates to restitution generally. The complexity of the probation and restitution statutes is evidence of the need for courts to consider the application of each subsection within the overall framework. Consistent with this statutory framework, we interpret sec. 973.09(3)(b) to impose special requirements only in cases of probation extensions.

We first consider the legislative history as provided by the drafting file for Chapter 238 of the Laws of 1979, which repealed and recreated sec. 973.09(3) to include the disputed notification requirement. The drafting file contains a request from Ed Jackamonis, then Assembly Speaker, for a bill to be drafted that would:

> [A]dd language to sections 973.09(2) and (3) to indicate that the intent of probation is to encourage restitution so as to make the victim of crime whole. *A person should not be discharged from probation until a court determines at a hearing that defendant has made restitution as ordered by the court or that the court finds that the defendant cannot reasonably be expected to make restitution.* (emphasis added).

1075

Thus, the earliest discussion regarding the scope of sec. 973.09(3)'s notification requirement focused only on its possible impact on probation discharges and unpaid restitution. The Legislative Reference Bureau similarly interpreted the Assembly Speaker's intentions and ultimate focus for the bill:

> This proposal requires that if a person is placed on probation, the court must require the defendant to make payment of restitution to wholly compensate the victim, unless there is a substantial countervailing reason not to require restitution. *If the probation supervisor reports that required restitution has not been made, the court must hold a probation review hearing. The probationer will not be discharged unless restitution is made or the court finds the person cannot reasonably be expected to make restitution.* (emphasis added).

In light of these references, we agree with the state's assertion that applying sec. 973.09(3)(b) to probation revocations is to "turn the law on its head." The manifest purpose for including the notification and hearing requirement was to encourage restitution payment by notifying the court of the need to extend the term of probation; to insert a check in the probation system to prevent probationers from being discharged without having paid restitution. To the contrary, the decision of the court of appeals allows defendants to use the statute's provisions as a means for prohibiting the Department from carrying out its duties to control and supervise probation pursuant to sec. 973.10, Stats.

The statutory language of sec. 973.09(3)(b) specifically mandates that the Department:

> shall notify the sentencing court . . . of the status of the ordered payments unpaid at least 90 days before

the probation expiration date. If payment as ordered has not been made, the court shall hold a probation review hearing prior to the expiration date . . ..

While the sentencing court retains exclusive authority to impose probation and restitution, it is the Department of Correction that exercises control over the supervision of probationers.[6] Once the Department decides to revoke a probationer's term, the sentencing court loses the authority to intervene in the process. *See State v. Balgie,* 76 Wis. 2d 206, 208–09, 251 N.W.2d 36 (1977). Accordingly, it is contrary to the statutory scheme to apply sec. 973.09(3)(b)'s notice and hearing requirements as did the court of appeals when the Department elects to institute revocation proceedings. The above quoted language clearly indicates that the statute's requirements are intended to apply only in situations over which the court retains jurisdiction, namely the imposition and extension of terms of probation.

Applying sec. 973.09(3)(b) requirements only to probation extensions seems particularly appropriate if one

---

[6] Pursuant to Wis. Stats., § 973.10, the Department of Corrections retains the following authority over probationers:

(1) *Imposition of probation shall have the effect of placing the defendant in the custody of the department and shall subject the defendant to the control of the department* under conditions set by the court and rules and regulations established by the department for the supervision of probationers and parolees.

(2) *If a probationer violates the conditions of probation, the department of corrections may initiate a proceeding before the division of hearings and appeals in the department of administration.* Unless waived by the probationer, a hearing examiner for the division shall conduct an administrative hearing and enter an order either revoking or not revoking probation. Upon request of either party, the administrator of the division shall review the order. If the probationer waives the final administrative hearing, the secretary of corrections shall enter an order either revoking or not revoking probation. . . . (emphasis added).

1077

considers the many protections and safeguards that already apply to the revocation process. For example, Chapter DOC 331 of the Wisconsin Administrative Code guides the Department through the revocation process and outlines the necessary procedures to be followed, including an investigation of the alleged probation violation and a mandatory preliminary revocation hearing "to determine whether there is probable cause to believe that the client violated a rule or a condition of supervision." Wis. Admin. Code, DOC §§ 331.03(2) and 331.04(1).

Throughout this preliminary process, the probationer is guaranteed legal counsel and is provided an opportunity at the hearing to introduce evidence and to respond in person to all allegations. Wis. Admin. Code., DOC § 331.04(4). Further, the examiner presiding at the preliminary revocation hearing must issue "a written decision stating his or her findings and conclusions and giving reasons for the decision. The decision shall be based on the evidence presented. . . ." Wis. Admin. Code. DOC § 331.04(7)(b). The probationer is similarly protected once probable cause has been determined and a final revocation hearing has been scheduled with the Department of Hearings and Appeals to decide whether the circumstances warrant revocation.[7]

---

[7] The following procedures presently apply to all final revocation hearings brought before the Division of Hearings and Appeals:

(1) NOTICE. Notice of a final revocation hearing shall be sent by the division within 5 days of receipt of a hearing request from the department to the client, the client's attorney, if any, and the department's representative. The notice shall include:

(a) The date, time, and place of the hearing;

(b) The conduct that the client is alleged to have committed and the rule or condition that the client is alleged to have violated;

(c) A statement of the rights established under sub. (2);

A probationer whose term has been revoked may seek review of the Administrator's determination by certiorari in the county in which the probationer was convicted of the offense for which the now revoked probation was imposed. Section 801.50(5), Stats. *See also State ex rel. Johnson v. Cady,* 50 Wis. 2d 540, 185 N.W.2d 306 (1971). On review it is the court's responsibility to determine whether the revocation was grounded on permissible evidence or whether the administrator abused his or her discretion in revoking the probationer's term. *State ex rel. Johnson,* 50 Wis. 2d at 565.[8]

(d)   Unless otherwise confidential or disclosure would threaten the safety of a witness or another, a list of the evidence and witnesses to be considered at the hearing . . ..

(e)   A statement that whatever information or evidence is in the possession of the department is available from the department for inspection unless otherwise confidential . . ..

(3)   CLIENT'S RIGHTS. The client's rights at the hearing include:

(a)   The right to be present;

(b)   The right to deny the allegation;

(c)   The right to be heard and to present witnesses;

(d)   The right to present documentary evidence;

(e)   The right to question witnesses;

(f)   The right to the assistance of counsel;

(g)   The right to waive the hearing;

(h)   The right to receive a written decision stating the reasons for it based upon the evidence presented; and

(i)   The right to appeal the decision in accordance with sub. (8).

Wis. Admin. Code, HA § 2.05 (1991).

   [8] The court may also review the reasonableness of the conditions placed on probation, *e.g.,* the amount of restitution assessed the defendant. *See Huggett v. State,* 83 Wis. 2d 790, 797 n.5, 266 N.W.2d 403 (1978) (citing cases and commentaries).

Past decisions of this and other courts indicate the care with which the Department of Corrections and the Division of Hearings and Appeals are expected to exercise their discretionary authority during these proceedings. "Discretion" includes not only "the process of decision making on the basis of the relevant facts but also requires that the decision be consonant with the purposes of the established law or other guides to discretion." *State ex rel. Plotkin v. DHSS,* 63 Wis. 2d 535, 545, 217 N.W.2d 641 (1974). In actions similar to the one before us today, this court has admonished circuit courts of the need to establish probation conditions that will aid the offender's rehabilitation without undermining his or her sense of responsibility. *See generally Huggett v. State,* 83 Wis. 2d at 798–99. In respect to levying fines and financial obligations, for example, the sentencing court must consider the probationer's ability to pay the assessed restitution and is expressly forbidden from incarcerating a probationer solely because of indigency. *See, e.g., State ex rel. Pedersen v. Blessinger,* 56 Wis. 2d 286, 289, 201 N.W.2d 778 (1972); *Will v. State,* 84 Wis. 2d 397 402, 267 N.W.2d 357 (1978). If the defendant questions the propriety of the court's assessment in light of his alleged indigency then the sentencing court must render a determination on the matter. *Will,* 84 Wis. 2d at 404 *(quoting West Allis v. State ex rel. Tochalauski,* 67 Wis. 2d 26, 32, 226 N.W.2d 424 (1975)).

We conclude that these well-established standards for exercising judicial discretion in the sentencing process apply with equal force to the administrator's exercise of discretion during revocation proceedings. *See Bearden v. Georgia,* 461 U.S. 660 (1983) (reversing trial court decision to revoke probation solely because peti-

tioner could not pay his fine). In the instant dispute, proper discretion was exercised both in calculating the amount of Bartus's ordered restitution as well as in determining whether to extend or revoke his term of probation. Neither party disputes that the sentencing court properly accounted for Bartus's individual circumstances in the assessment of restitution and court charges. That the Division of Hearings and Appeals also properly exercised its discretion when it decided to revoke Bartus's probation is clear from the evidence admitted at his revocation hearing. Specifically, the hearing examiner solicited information in respect to Bartus's ability to pay restitution and revoked probation only after ascertaining that Bartus's failure to pay was his way of protesting the 1988 resentencing and not the result of indigency.[9] We therefore conclude that the hearing examiner's determination satisfied the constitution's due process and equal protection requirements.

We next consider whether the circuit court erroneously exercised its discretion by affirming the decision of the Division of Appeals and Hearings to revoke Bartus's probation. Bartus argues that the circuit court erred in finding that neither the hearing examiner nor the reviewing administrator acted arbitrarily or capriciously in refusing to entertain jurisdictional objections to the

---

[9] *Cf. State v. Gerard,* 57 Wis. 2d 611, 623, 205 N.W.2d 374 (1973) (upholding defendant's probation revocation because "indigency did not cause his probation to be revoked, but rather his own refusal to at least attempt compliance"); *State v. Jackson,* 128 Wis. 2d 356, 382 N.W.2d 429 (1986) (circuit court abused its discretion in extending probation because of defendant's failure to make full restitution). *See also Bearden,* 641 U.S. at 668 ("If the probationer has willfully refused to pay the fine or restitution when he has the means to pay, the State is perfectly justified in using imprisonment as a sanction to enforce collection.").

circuit court's authority to impose the 1988 order for restitution. We reject this argument and conclude that the circuit court exercised proper discretion in affirming the decision of the Division of Hearings and Appeals to revoke Bartus's probation.

In his decision, the hearing examiner explained that he lacked the authority to void a facially valid order of the circuit court and therefore was unable to address Bartus's challenge to the 1988 resentencing. Insofar as a revocation review hearing is an administrative proceeding, the hearing examiner's jurisdiction is limited to those matters either expressly granted to them or necessarily implied. *See State ex rel. Johnson,* 50 Wis. at 546; *Neis v. Educ. Bd. of Randolph School,* 128 Wis. 2d 309, 314, 381 N.W.2d 614 (Ct. App. 1985). Because neither the Division of Hearings and Appeals nor the Department of Corrections has been granted the authority to void or reverse circuit court judgments, the hearing examiner was correct to limit his determination to questions relating to the proposed revocation.

The state next argues that the circuit court's review of the administrative decision to revoke a probationer's term is limited to determining whether the department's action was "arbitrary and capricious and represented its will and not its judgment." State Brief-in-Chief at 24 (quoting *State ex rel. Johnson,* 50 Wis. 2d at 550). Thus, the state argues, the circuit court was precluded from addressing Bartus's jurisdictional challenge, which could only be raised in an appeal from the 1988 resentencing or in a motion for postconviction relief in the court of conviction.

We disagree with the state's position. Jurisdictional challenges may be raised at any juncture during a court

proceeding. In the instant case, the circuit court was reviewing the propriety of a Department decision to revoke a probationer's term for failure to pay restitution. Bartus's jurisdictional challenge to the 1988 sentence which imposed the restitution, was therefore central to the subject matter jurisdiction of the court on review. *See In Interest of R.L.C. v. State of Wisconsin,* 114 Wis. 2d 223, 225, 338 N.W.2d 506 (1983) ("[t]he double jeopardy clause to the United States Constitution was designed as much to prevent a defendant from being twice punished for the same offense as from being twice tried for it"); *State v. Bowden,* 93 Wis. 2d 574, 580, 288 N.W.2d 139 (1980) ("[t]he protections afforded by the Double Jeopardy Clause include . . . protection against multiple punishments for the same offense"). If Bartus is correct that the circuit court was without authority to resentence him in 1988 because he had already served the initial 1986 sentence, then the 1988 order for probation and restitution is null and void as a matter of law. The circuit court would have impermissibly subjected Bartus to multiple punishment for the same offense.

We are unable to determine from the record before us the validity of Bartus's jurisdictional challenge. We therefore remand the matter to the circuit court to determine whether as a matter of law the probation was stayed pending appeal when Bartus was first released from jail or whether as a matter of fact Bartus served his sentence of probation during the pendency of that stayed appeal. If it is determined that he has already completed the sentence for the 1986 conviction, we direct the circuit court to order Bartus discharged from probation.

*By the Court.*—The decision of the court of appeals is reversed and cause remanded to the circuit court for further proceedings.