In the Matter of Ronald Paul
LYNOTT, Sr., Debtor.

Bankruptcy No. 94–20669–CNC.

United States Bankruptcy Court,
E.D. Wisconsin.

April 2, 1996.

John F. Waldschmidt, Waldschmidt Law Offices, Oconomowoc, WI and Mark L. Metz, Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C., Milwaukee, WI, for debtor.

Dirk W. de Roos, Faegre & Benson, Denver, CO, for International Multifoods Corp. and VSA, Inc.

Alan G. Dunn, Phelps, Singer & Dunn, Denver, CO, Attorney for Prudential Insurance Company of America.

Thomas M. Pyper, Whyte Hirschboek Dudek S.C., Madison, WI, for HIRSP.

## AMENDED DECISION AND ORDER

C.N. CLEVERT, Chief Judge.

Four related matters are under consideration in this case. The debtor, Paul Lynott, is seeking an order pursuant to Fed. R.Bankr.P. 60(b), either vacating or clarifying an earlier order authorizing the Chapter 7 trustee to compromise a law suit that he (Lynott) filed prior to this bankruptcy. Related motions, by the Wisconsin Health Insurance Risk Sharing Plan (HIRSP), and VSA, Inc., International Multifoods Corp. and Prudential Insurance Company of America, Inc., request intervention in the proceedings considering Lynott's motion. Lastly, the trustee is objecting to Lynott's second amended exemption seeking to remove the aforementioned law suit from the bankruptcy estate, pursuant to Wis.Stat. § 815.18(3)(j). All of the motions are denied, except the objection to Lynott's exemption, which is sustained in part.

\* \* \* \* \* \*

In November 1993, Lynott filed suit in the United States District Court for the District of Colorado (Colorado action) to obtain injunctive relief and damages against VSA, Inc., International Multifoods Corp. and Prudential Insurance Company of America, Inc. (Colorado defendants), for common law breach of contract, wilful, wanton, outrageous conduct and bad faith. The complaint requests a declaratory judgment that Lynott is entitled to coverage under his ex-spouse's health benefit plan.

Prior to bankruptcy, the district court dismissed all of Lynott's claims in the Colorado action, except his claim for relief under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1101, et seq., and the Consolidated Omnibus Budget Reconciliation Act (COBRA), 29 U.S.C. § 1161 et seq.[1]

### FACTUAL BACKGROUND

Lynott was covered by VSA's Group Employee Benefit Health Plan (the Plan) as a dependent spouse, prior to his divorce on February 7, 1992. After the divorce, he remained interested in Plan coverage and claims to have remitted statements of medical expenses to VSA seeking payment.

Lynott further asserts that in February 1993, he received a letter from VSA's insurance department advising that he was not covered by the Plan, thereby saddling him with significant medical expenses for his heart condition[2] and precipitating the Colo-

---

1. These acts enable an ex-spouse to maintain insurance coverage under the former spouse's health benefit plan, for a limited period of time, subject to certain conditions and limitations.

2. Lynott is said to suffer from chronic congestive heart failure, caused by severe progressive idiopathic dilated cardiomyopathy. He has apparently met the criteria for heart transplantation and is waiting to receive a donor heart.

rado action. However, as Lynott was unable to pay his mounting medical bills, and was already liable for more than $8,000 in medical expenses, he filed for bankruptcy on February 11, 1994, claiming the Colorado action exempt under 11 U.S.C. §§ 522(d)(10)(C), and (11)(D) and (E).[3] The initial exemption was then amended to claim the Colorado action exempt under Wis.Stat. §§ 815.18(3)(i)(1)(c) and (d).[4]

Thereafter, the Chapter 7 trustee contended that because the Colorado action asserts a claim under ERISA, it was not a claim for personal bodily injury or loss of future earnings subject to exemption under Wis.Stat. §§ 815.18(3)(i)(1)(c) and (d). Also, the trustee maintained that the Colorado action was property of the estate and that Lynott no longer had standing to prosecute the case. Therefore, the trustee proposed settling the Colorado action for $30,000 and sent creditors and Lynott notice of his intention with an opportunity to object. Lynott objected to the settlement through bankruptcy counsel and the attorney handling the Colorado action.

At a hearing on December 6, 1994, this court found that Lynott's objection was without merit. Accordingly, it was dismissed and an order approving the trustee's proposed compromise was entered on December 28, 1994 (December 28 order).

Afterward, the trustee filed a motion for substitution in the United States District Court for the District of Colorado. The district judge directed Lynott to file a response to the trustee's motion for substitution and the matter was then referred to a magistrate judge.

On May 22, 1995, and June 28, 1995, motions to intervene and vacate or amend the December 28 order were filed in this court by HIRSP and the Colorado defendants. Lynott moved to vacate or clarify the order on June 15, 1995, alleging extraordinary circumstances justifying relief under Fed. R.Civ.P. 60(b), as incorporated by Fed. R.Bankr.P. 9024.

At a hearing on these motions, on July 5, 1995, HIRSP asserted an economic interest in the outcome of the Colorado action, warranting intervention in the proceedings on Lynott's motion. HIRSP contends that the issue of Lynott's entitlement to HIRSP coverage will not be resolved if the Colorado action is settled by the trustee. In other words, if the Colorado action is not decided on its merits and Lynott later comes to HIRSP seeking health care benefits for his heart transplant, which benefits are only available to persons without other medical coverage,[5] HIRSP will have to litigate the issue of Lynott's eligibility for coverage. Consequently, HIRSP seeks a finding that the future benefits Lynott seeks in the Colorado action are not property of the estate. Alternatively, it requests that the benefits be declared exempt. As a result, HIRSP hopes to limit its future legal costs and potential liability for Lynott's medical expenses.

The Colorado defendants, on the other hand, seek to intervene to protect their interest in the previously approved settlement. They argue that due process entitles them to defend their "contract" with the trustee.

On July 7, 1995, the debtor amended his bankruptcy Schedule C a second time, claiming the Colorado action exempt under Wis. Stat. § 815.18(3)(j).[6] The trustee objects,

---

3. Respectively, these provisions of the Bankruptcy Code allow exemptions for disability and illness benefits, payment not to exceed $7,500 for personal bodily injury, and payment in compensation for loss of future earnings.

4. Exempting, respectively, the following:
   c. A payment, not to exceed $25,000, resulting from personal bodily injury, including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent.
   d. A payment in compensation of loss of future earnings of the debtor or an individual of whom the debtor is or was a dependent in an

amount reasonably necessary for the support of the debtor and the debtor's dependents.

5. See Wis.Stat. §§ 619.10–18.

6. Allowing an exemption for
   [a]ssets held or amounts payable under any retirement, pension, disability, death benefit, stock bonus, profit sharing plan, annuity, individual retirement account, individual retirement annuity, Keogh, 401–K or similar plan or contract providing benefits by reason of age, illness, disability, death or length of service and payments made to the debtor therefrom.

contending, *inter alia*, that the benefits sought by Lynott in the Colorado action are not within the purview of the statute. Additionally, the trustee objects to Lynott's motion to clarify or vacate the December 28 order. A hearing on the trustee's objection to the second amended exemption was conducted on September 21, 1995, at which time the court and the parties revisited the intervention issue.

## DISCUSSION

### Jurisdiction

These are core proceedings under 28 U.S.C. §§ 157(b)(2)(A) and (B). Jurisdiction over the three pending matters—exemptions, intervention in the main case and the Rule 60(b) motion—rests on 28 U.S.C. §§ 1334(a) and (b), 157(a) and the July 10, 1984, Order of Reference for the United States District Court for the Eastern District of Wisconsin.

### Intervention

■ During the hearing on July 5, 1995, this court permitted the Colorado defendants and HIRSP to be heard on the questions of whether the Colorado action is property of the estate and the ramifications of amending or clarifying the December 28 order. Additionally, the court permitted these parties to file briefs expressing their respective positions while reserving decision on the intervention motions. The motions are now denied.

■ Fed.R.Bankr.P. 2018(a) allows an interested entity to intervene either generally or with regard to a specific issue, for cause shown, at the discretion of the court.[7] *In re Addison Comm. Hosp. Auth.*, 175 B.R. 646 (Bankr.E.D.Mich.1994); *Resolution Trust Corp. v. Russell Corp. (In re Russell Corp.)*, 156 B.R. 347 (Bankr.N.D.Ga.1993). To show cause, an entity seeking to intervene must demonstrate that its interests are not adequately protected and that intervention will not result in undue delay or prejudice. *In re Torrez*, 132 B.R. 924, 936 (Bankr.E.D.Cal. 1991). The "lack of adequate representation of interests" requirement may be shown by establishing an economic interest in the mat-ter which is not otherwise protected. *Id.; In re Public Serv. Co. of New Hampshire*, 88 B.R. 546, 551 (Bankr.D.N.H.1988) (citing cases).

HIRSP, both at the hearing and in its brief, asserts that it has an economic interest in Lynott's bankruptcy which is not otherwise adequately represented. However, when HIRSP's arguments are closely examined, it is readily apparent that the economic interest HIRSP seeks to protect is its potential liability for Lynott's future medical bills and the risk of having to separately litigate his entitlement to HIRSP benefits, if the Colorado action is settled. That is to say, HIRSP opposes any settlement of the Colorado action by the trustee because the key issues—the debtor's entitlement to health care benefits from the Colorado defendants—will not be resolved. If it is determined that Lynott is entitled to past benefits from the Colorado defendants, HIRSP may seek to recover any benefits it paid during the covered period. If, however, it is determined that the debtor is entitled to future benefits, HIRSP may seek to disclaim coverage entirely, and to recoup benefits previously paid. Therefore, HIRSP is effectively attempting to have the Colorado action resolved on its merits now to avoid litigating with Lynott later.

HIRSP's economic interest, fueled by its desire to defray the costs of possible future litigation, is merely collateral or contingent and insufficient "cause" for authorizing intervention. *Harris v. Swolsky (In re Hyde Park Partnership)*, 73 B.R. 194, 196–97 (Bankr.N.D.Ohio 1986). Moreover, there is no reason to believe that HIRSP's rights will be prejudiced by denying intervention, as its duties or obligations to Lynott can and should be determined in another forum after the potential controversy concerning insurance coverage ripens. Hence, HIRSP's application must be denied.

The Colorado defendants' motion to intervene is dismissed also. They have failed to demonstrate any interest in the Chapter 7 estate or in Lynott's motion which will not be

---

7. In its entirety, Rule 2018(a) reads as follows: *Permissive Intervention.* In a case under the Code, after hearing on such notice as the court directs and for cause shown, the court may permit any interested entity to intervene generally or with respect to any specified matter.

adequately protected if intervention is denied. Moreover, their interest parallels that of the trustee and there is no suggestion (nor does this court believe) that the bankruptcy estate is not well represented.

### Amended Exemption

■ Fed.R.Bankr.P. 1009 provides that a debtor may, without leave of court, amend a voluntary petition, list, schedule or statement, as a matter of course and at any time prior to the close of the case, unless there is a showing of the debtor's bad faith by clear and convincing evidence. *In re Yonikus,* 996 F.2d 866, 871–72 (7th Cir.1993); *Stinson v. Williamson (In re Williamson),* 804 F.2d 1355 (5th Cir.1986).

The trustee's objection to the second amended exemption states that Lynott is acting, and has acted, in bad faith, through his conduct prior to filing the amendment and his actions and statements in pursuit of HIRSP benefits. Also, the trustee alleges prejudice to creditors and the estate, in the form of accrued attorney's fees arising from his efforts to settle the Colorado action.

The trustee concedes that, but for the Colorado action, this is a no-asset case. Thus, as a practical matter, creditors would be no worse off if Lynott had asserted the now-claimed exemption at the outset of the case. Moreover, the trustee has not presented clear and convincing evidence that the information on Lynott's application for HIRSP coverage was inconsistent with, or contrary to, the claims asserted in the Colorado action. It follows that this aspect of the trustee's objection lacks a basis in fact or law, and cannot be sustained.

■ However, allowing the claimed exemption, as amended, is another matter entirely. Lynott claims the Colorado action exempt as in the nature of

> [a]ssets held or amounts payable under any retirement, pension, disability, death benefit, stock bonus, profit sharing plan, annuity, individual retirement account, individual retirement annuity, Keogh, 401–K or similar plan or contract providing benefits by reason of age, illness, disability, death or length of service and payments made to the debtor therefrom.

Wis.Stat. § 815.18(3)(j). The trustee urges this court to find that the Colorado action is not within the ambit of this statute and that the exemption should be disallowed. Lynott's response is that a claim for health care benefits, pursuant to an employer's health care plan, is precisely an "amount[ ] payable under ... a similar plan or contract providing benefits by reason of ... illness...."

The court cannot find, nor have the parties provided, any case law construing, or legislative history discussing, this exemption. Therefore, as far as the court can tell, the question presented is one of first impression.

The text of § 815.18(3)(j) appears under the sub-heading "retirement benefits." This strongly suggests that the "[a]ssets held or amounts payable" to a debtor under the listed plans and contracts are exemptible only if they are in the form of benefits paid to retired persons, or others similarly situated. *Bartus v. Wisconsin Dep't of Health & Soc. Servs., Div. of Corrections,* 176 Wis.2d 1063, 1074, 501 N.W.2d 419 (1993) ( "Statutes are to be construed so as best to effectuate the plain meaning of their terms." ); *West Allis School Dist. v. Wisconsin Dep't of Indus., Labor and Human Relations,* 116 Wis.2d 410, 342 N.W.2d 415 (1984); *State v. Clausen,* 105 Wis.2d 231, 243–44, 313 N.W.2d 819 (1982) ( "In construing a statute, the entire section and related sections are to be considered.... Furthermore, a statute should be construed to give effect to its leading idea.... Sections of statutes relating to the same subject must be construed in pari materia." ) (citations omitted).

Pensions and payments under stock plans or other plans for retirees, and comparable payments received by persons who have retired due to illness or disability, share a common attribute—they are intended to compensate the covered party and may be viewed as a form of future wages or earnings. Put another way, the payments are "deferred compensation for services rendered." BLACK'S LAW DICTIONARY 1134 (6th ed. 1990). Conversely, the exemptions provided in Wis.Stat. § 815.18(3)(i)(1)(a)–(d), the "sister" section to § 815.18(3)(j), are all in the nature of payments to compensate for

actual bodily injury and actual pecuniary loss resulting therefrom.

In the Colorado action, Lynott seeks to recover health benefits. At bottom, he wants the Colorado defendants to pay for his future health care expenses. Even assuming that he was entitled to payments of either past or future medical expenses, any funds received by Lynott would clearly not be in the nature of future earnings or compensation for services previously rendered. Moreover, as there is nothing in this record to suggest that Lynott was ever employed by any of the Colorado defendants, he cannot reasonably contend that he is part of, or even eligible for, any retirement program they maintain.

While the exemption claim may be premised upon a contract between Lynott and the Colorado defendants, or an insurance contract for Lynott's benefit, the exemption granted by § 815.18(3)(j) does not include payments to third party health care providers, as contemplated by the Plan in question.[8] Moreover, while § 815.18(3)(j) specifically includes IRA's, Keogh's and 401–K's, it omits any reference to ERISA or ERISA-qualified health insurance plans. This is not to say, necessarily, that the Wisconsin legislature had the maxim "inclusio unius est exclusio alterius" in mind when drafting the statute. But, as ERISA and ERISA-qualified health insurance plans are now common, it is not unreasonable to assume that the legislature was familiar with ERISA and specifically chose to omit it from the statute.

Therefore, the court finds that the claim surviving in the Colorado action does not fall within the purview of Wis.Stat. § 815.18(3)(j) and that Lynott's second amended exemption must be disallowed.

### Rule 60(b) Motion

▮ Lastly, Lynott asks the court to revisit its December 28 order, pursuant to Fed.

R.Civ.P. 60(b)(6) and Fed.R.Bankr.P. 9024, which incorporates and limits Rule 60(b).[9]

▮ The court has discretion to grant a motion pursuant to Rule 60(b)(6), as it is an infrequent measure requiring exceptional circumstances. *Williams v. United States Drug Enforcement Administration,* 51 F.3d 732, 735 (7th Cir.1995) (citing *McKnight v. U.S. Steel Corp.,* 726 F.2d 333, 338 (7th Cir. 1984) ("The rule is intended to be an extraordinary remedy, designed to address mistakes attributable to special circumstances.")); *Reinsurance Co. of America, Inc. v. Administratia Asigurarilor de Stat (Administration of State Insurance),* 902 F.2d 1275 (7th Cir.1990). A significant change of circumstances must have occurred since the date of the original judgment or order to warrant modification, and a failure to appeal or seek other appropriate relief will not suffice. *Andrews v. Heinold Commodities, Inc.,* 771 F.2d 184, 188 (7th Cir.1985) (citing *Ackermann v. United States,* 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950)); *Duran v. Elrod,* 713 F.2d 292, 296 (7th Cir.1983) (citing *Benjamin v. Malcolm,* 528 F.Supp. 925, 928 (S.D.N.Y.1981)), *cert. denied,* 465 U.S. 1108, 104 S.Ct. 1615, 80 L.Ed.2d 143 (1984).

Whether the Colorado action is property of the estate, in fact, was previously addressed in December, 1994, at the hearing on Lynott's objection to the trustee's proposed compromise. Lynott's attorney had the following exchange with the court:

THE COURT: Are you claiming that the lawsuit is an asset of your client's which has been claimed exempt in this bankruptcy?

MR. LADE: It would appear that the assets—that upon the filing of the petition, the lawsuit in the asset form became the property of the estate.

---

8. The Plan will pay major medical expenses up to a lifetime maximum of $500,000 for the insured and each dependent. Lynott's November 25, 1994, Supplemental Objection to Compromise Lawsuit at Exhibit C.

9. In pertinent part, Fed.R.Civ.P. 60(b) reads as follows:
  (b) MISTAKES; INADVERTENCE; EXCUSABLE NEGLECT; NEWLY DISCOVERED EVIDENCE; FRAUD, ETC. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for [mistake, inadvertence, excusable neglect, newly discovered evidence fraud, etc. ...] or (6) any other reason justifying relief from the operation of the judgment.

Now, there's a question as to whether the exemption would appeal [sic] to an ERISA claim given it hinges around what's personal injury. It was—there was no accident here, or there wasn't—it was a preexisting condition, basically....

THE COURT: Can you now tell me whether or not you are claiming this lawsuit exempt under Wisconsin Statute 815.18(3)(I); and if so, which of the subsections it's [sic] applicable to the claim that you're asserting?

MR. LADE: It would seem that c. would be applicable in this situation, pertaining to a payment not to exceed $25,000.

(Discussion held off the record.)

THE COURT: So at the very most, only $25,000 of any exempt—any settlement reached by the Trustee would be claimed as property of the debtor exempt from creditors. Is that correct?

MR. LADE: That would appear to be correct, Your Honor.

.        .        .        .        .

THE COURT: All right. So if that's—if that's the basis then, on what basis should we proceed with your objection?

MR. LADE: The only question would be whether or not he would have a right to intervene in the lawsuit, given the special circumstances involved with the issues.

THE COURT: You—

MR. LADE: In the sense that Mr. Lynott, given his—

THE COURT: Whether he would have a right to intervene in the District Court suit?

MR. LADE: Apparently—correct.

Because now, apparently, the claim belongs to the Trustee as a result of the bankruptcy filing. But my only concern is that, is given what the ramifications could be of the settlement of the claim, it could have a very serious effect on his health, obviously. That's why I'm hedging the way I an in front of the Court.

December 6, 1994, Tr. at 17, 19–20.

Following the hearing, the court entered the December 28 order, which stated at paragraph 3 "[t]he debtor acknowledges that the claim embraced in the Colorado Lawsuit is property of the estate under Sec. 541, *Bank-ruptcy Code,* and the court so finds and further finds that the trustee is the proper party plaintiff in the Colorado Lawsuit." This finding is clear, unambiguous and consistent with the colloquy between the court and Lynott's counsel, as set forth above. Lynott failed to file a timely appeal or seek reconsideration of the order, and he has presented no facts or circumstances which persuade the court to exercise its discretion in favor of granting the motion.

## CONCLUSION

Based upon the foregoing, which constitute this court's Findings of Fact and Conclusions of Law in accordance with Fed.R.Bankr.P. 7052, HIRSP's motion is denied in its entirety; the Colorado defendants' motion is dismissed as moot; the trustee's objection to the amended exemption is sustained on the ground that the Colorado action is not within the ambit of Wis.Stat. § 815.18(3)(j); and Lynott's motion is denied.

IT IS SO ORDERED.