COURT OF APPEALS
DECISION
DATED AND FILED

October 6, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP2316-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2017CF912**

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ANTHONY HOWARD, JR.,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Milwaukee County: CYNTHIA MAE DAVIS, Judge. *Affirmed*.

Before Brash, P.J., Dugan and Donald, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Anthony Howard, Jr. appeals his judgment of conviction for three counts of physical abuse of a child by recklessly causing great

bodily harm, and one count of child neglect causing bodily harm. Howard argues that the trial court erred in permitting the State to introduce specific instances of domestic violence as rebuttal character evidence during its direct examination of Howard's wife, T.H. The trial court allowed the evidence pursuant to WIS. STAT. § 904.04(1)(a) (2017-18),[1] which permits character evidence of the accused to be introduced by the State in rebuttal when the same has been offered by the accused.

¶2      The trial court also referenced WIS. STAT. § 904.05, which states that admissible character evidence may be introduced through opinion testimony. *See* § 904.05(1). However, the statute places constraints on the introduction of *specific instances* of character evidence: specific instances can only be introduced either on cross-examination of the witness offering the opinion testimony, *see id.*, or if the character trait involved is an "essential element" of the charge, *see* § 904.05(2). Neither of those two exceptions are applicable in this case.

¶3      Therefore, we conclude that the trial court did not properly apply WIS. STAT. § 904.05 and, as a result, it erred in allowing the State to introduce specific instances of character evidence. However, we further conclude that the error was harmless. We therefore affirm.

## BACKGROUND

¶4      The charges against Howard stem from injuries to Howard's daughter, P.M.H., who was five months old at the time. P.M.H. had been born premature, causing developmental delays. A physical therapist, Gail Eisner, had been working

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

with P.M.H. to improve the motion in her joints, a condition related to her premature birth.

¶5     Eisner came to the Howards' home once a week to work with P.M.H., beginning shortly after she was born. Eisner performed various movements and stretches with P.M.H. Eisner also showed Howard and T.H. how to do the exercises with P.M.H., and encouraged them to work with her outside of her therapy sessions.

¶6     During a visit in February 2017, Eisner noticed that P.M.H.'s left leg was bent to the side, and that her left thigh was swollen. Eisner brought this to the attention of P.M.H.'s parents, but they walked away without responding. Eisner then terminated the therapy session, and called P.M.H.'s pediatrician from her vehicle while she was still parked at Howard's home. The pediatrician told Eisner that P.M.H. should be taken to the emergency room. Eisner called the parents to give them this information; it took three calls before they answered.

¶7     P.M.H. was examined by Dr. Lynn Sheets, a child abuse pediatrician at Children's Hospital. P.M.H. was found to have multiple fractures to both legs, her left arm, her right shoulder, and two ribs. Dr. Sheets reported that these types of fractures, and their distribution, were indicative of severe physical child abuse.

¶8     Additionally, Dr. Sheets' report stated that at least one of the leg fractures would have been "severe and painful," and that P.M.H. would have been "immediately symptomatic in terms of decreased use of that extremity" and in "significant distress." Dr. Sheets explained that "[a]ny movement of that leg," such as during clothing or diaper changes, or any attempts to bear weight, would "cause extreme pain." As a result, Dr. Sheets opined that this fracture in particular "should have prompted immediate medical care," and the failure to disclose this injury constituted "medical neglect."

¶9 The police interviewed Howard, who stated that he took care of the children, including P.M.H., while T.H. was at work. He further stated that no one else cared for P.M.H. besides himself and T.H.

¶10 Howard initially stated he did not know how P.M.H. had been injured. However, during a second interview, after being shown a diagram of P.M.H.'s injuries, Howard stated that he had been performing the exercises with P.M.H. as Eisner had shown him, which had caused the injuries to her arms and legs. With regard to her broken ribs, Howard explained that P.M.H. would occasionally get constipated, and that he would squeeze her stomach and ribs together with his hands in an attempt to get her to defecate.

¶11 The matter proceeded to trial in June 2017. Dr. Sheets testified on behalf of the State regarding her examination of P.M.H. and her findings, as well as her conclusion that P.M.H.'s injuries were not "consistent with any sort of unintentional or accidental mean[s.]"

¶12 Eisner also testified on behalf of the State, explaining the nature of the exercises that she performed with P.M.H. She explained the correct way to perform the exercises to avoid injuries, and stated that she had also explained this to Howard and T.H. Additionally, she described discovering P.M.H.'s injured leg, and stated that Howard's demeanor was "calm" when she told him P.M.H. was injured, and that he did not seem to be upset by it.

¶13 On cross-examination, Howard's trial counsel asked Eisner whether she had ever seen Howard act aggressively toward P.M.H. or T.H.; Eisner replied that she had not. Counsel also noted Eisner's comment that Howard was calm when she informed him of P.M.H.'s injury, and asked whether this was how Eisner would describe Howard; Eisner replied "Yes, he's a calm person."

4

¶14     T.H. also testified on behalf of the State.  Prior to her testimony, the State argued that trial counsel had "opened the door" regarding Howard's "character for aggression or violence" during counsel's cross-examination of Eisner.  Thus, the State asserted that it could "elicit[] testimony through [T.H.] about her knowledge of [Howard]'s violence, in particular, some specific acts of domestic violence." Howard's trial counsel objected, although he did concede that his asking Eisner about Howard "being a calm person" had opened the door for the introduction of character evidence.

¶15     The trial court agreed that counsel asking Eisner "in general" whether Howard was a calm person "was essentially eliciting a character trait[.]"  Therefore, the court found that under WIS. STAT. § 904.04 (1)(a), the State could offer evidence of "a pertinent trait of [Howard]'s character to rebut the evidence elicited by [trial counsel]."

¶16     The trial court continued its analysis, noting that pursuant to WIS. STAT. § 904.05, the State "may elicit that testimony as well in the form of reputation or in the form of an opinion, and on cross-examination, though, the State is also allowed to inquire into relevant specific instances of conduct."  The court asked the State whether it anticipated that there would be specific instances of conduct introduced; the State replied affirmatively.  The court then ruled that under its analysis, "the State is allowed to rebut with asking, then, [T.H.] if there are specific instances of conduct."

¶17     The State subsequently called T.H. to testify.  During the State's direct examination, the prosecutor asked T.H. "generally" whether she knew Howard to be "a violent or aggressive individual[.]"  T.H. replied no, that Howard "wasn't like that in our relationship."  The prosecutor then asked T.H. whether Howard was ever

violent or aggressive toward her; T.H. again replied no. After that response, the prosecutor asked about a specific instance in February 2009 where T.H. had contacted the police after Howard had punched her in the head with a closed fist during an argument. Additionally, the prosecutor asked T.H. whether she knew of other allegations of domestic violence against Howard regarding incidents with two other women. T.H. admitted that she had heard about those incidents.

¶18    Additionally, prior to the start of trial, the State had filed a motion seeking to introduce other-acts evidence: Howard had a previous conviction in 1999 for physical abuse of a child by recklessly causing great bodily harm. The victim in that case was the eighteen-month-old daughter of Howard's live-in girlfriend. That child suffered "old and new subdural hematomas, old and new skull fractures, retinal hemorrhaging behind both eyes, and three fractured ribs." The examining doctor concluded that the child had been "the victim of more than one episode of shaken baby syndrome[.]" After conducting a *Sullivan*[2] analysis of the evidence, the trial court granted the State's motion. The Milwaukee Police Department detective involved in that investigation testified on behalf of the State regarding that case.

¶19    Howard was the only witness called by the defense. He confirmed his statement to police during the second interview that he was doing exercises with P.M.H., which caused her injuries. Howard also testified that he and T.H. were the only people who had the opportunity to cause P.M.H.'s injuries, and that he spent more time with P.M.H. than his wife, since he cared for P.M.H. and their other children while T.H. was at work.

---

[2] *See **State v. Sullivan**, 216 Wis. 2d 768, 576 N.W.2d 30 (1998).

¶20    The jury convicted Howard on all four counts.  He was sentenced to a total of ten years of initial confinement followed by eight years of extended supervision.  This appeal follows.

## DISCUSSION

¶21    On appeal, Howard contends that the trial court erred in allowing the State to elicit testimony from T.H. regarding the domestic violence incidents by Howard against T.H. and two other women.  Howard argues that his trial counsel did not "open the door" for character evidence when he asked Eisner about his "calm" demeanor, pursuant to WIS. STAT. § 904.04(1)(a).  Furthermore, Howard asserts that even if the provisions of that statute were invoked, specific instances regarding that character evidence should not have been admitted because according to WIS. STAT. § 904.05(1), they may be introduced only on cross-examination of the witness who offered the opinion relating to Howard's character—in this case, Eisner.

¶22    "Trial courts have broad discretion to admit or exclude evidence and to control the order and presentation of evidence at trial[.]" *State v. James*, 2005 WI App 188, ¶8, 285 Wis. 2d 783, 703 N.W.2d 727.  As with other discretionary decisions, we will uphold the trial court's decision to admit or exclude evidence if it "examined the relevant facts, applied a proper legal standard, and reached a reasonable conclusion using a demonstrated rational process." *State v. Mayo*, 2007 WI 78, ¶31, 301 Wis. 2d 642, 734 N.W.2d 115.  In other words, we will *not* uphold the trial court's exercise of discretion if it "is based on an error of law." *State v. Jackson*, 2014 WI 4, ¶45, 352 Wis. 2d 249, 841 N.W.2d 791 (citation omitted).

¶23    Because trial counsel conceded that he had opened the door for character evidence, we assume without deciding that the trial court did not err in

determining that trial counsel had invoked the provisions of WIS. STAT. § 904.04(1)(a).

¶24 As such, we then turn to the trial court's application of WIS. STAT. § 904.05(1), which provides how admissible character evidence may be introduced. We note that in its analysis regarding the admission of the evidence in question, the court correctly referenced the constraints on introducing specific instances of character evidence. However, it misapplied those constraints to the circumstances of this case. The alleged character evidence regarding Howard's demeanor was initially elicited by the defense in its cross-examination of Eisner, which the court ruled opened the door for the State to introduce rebuttal character evidence pursuant to WIS. STAT. § 904.04(1)(a). The court further ruled that the State could introduce specific instances of character evidence in its *direct examination* of its rebuttal witness—T.H.—citing § 904.05(1). However, that subsection allows specific instances to be introduced only during the *cross-examination* of the witness who provided the opinion testimony of character evidence—*not* on the direct examination of a different witness. *See Fond Du Lac Cnty. v. Town of Rosendale*, 149 Wis. 2d 326, 334, 440 N.W.2d 818 (Ct. App. 1989) ("One of the maxims of statutory construction is that courts should not add words to a statute to give it a certain meaning.").

¶25 Rather, the only scenario which would allow for specific instances of character evidence to be introduced by the State through T.H.'s testimony is if the character trait the State was seeking to introduce—Howard's tendency to be violent with women—was an "essential element" of the charges against him. *See* WIS. STAT. § 904.05(2); *see also Jackson*, 352 Wis. 2d 249, ¶84 ("Specific incidents of conduct to prove character are not admissible unless 'character or a trait of character ... is an essential element of a charge, claim, or defense.'" (citation

omitted; ellipses in *Jackson*)). It was not. *See* WIS JI—CRIMINAL 2111; WIS JI—CRIMINAL 2150. Thus, § 904.05 was not properly applied by the trial court.

¶26 The State contends that a challenge to any evidentiary error was forfeited by Howard, and that we are obligated to apply forfeiture pursuant to WIS. STAT. § 901.03(1)(a). However, the State did not develop that argument. Furthermore, we note that Howard, in his initial appellant's brief, included an argument as to why harmless error should not apply in this case, to which the State did not respond.

¶27 While we generally do not develop arguments for parties, *see State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992), we conclude that in this case, the trial court's erroneous admission of the specific instances of character evidence was a harmless error.[3] The harmless error rule in Wisconsin "accords a 'strong presumption' that an error is subject to a harmless[]error review." *State v. Nelson*, 2014 WI 70, ¶29, 355 Wis. 2d 722, 849 N.W.2d 317 (citations omitted). Its goal is to "'inject reasoned judgment ... into appellate review' to ensure retrials occur only when the error actually affected the original trial." *State v. Monahan*, 2018 WI 80, ¶34, 383 Wis. 2d 100, 913 N.W.2d 894 (citation omitted; ellipses in *Monahan*). Based on this standard, we believe that conducting a harmless error analysis is prudent here.

---

[3] With regard to the State's failure to present an argument for harmless error, we are not "obligated to accept a party's concession of law." *See State v. Carter*, 2010 WI 77, ¶50, 327 Wis. 2d 1, 785 N.W.2d 516. Furthermore, this court "has the authority to raise a question of law *sua sponte*[.]" *Bartus v. DHSS*, 176 Wis. 2d 1063, 1071, 501 N.W.2d 419 (1993). Moreover, this court "will search the record for reasons to sustain the [trial] court's discretionary decision," *see State v. Thiel*, 2004 WI App 225, ¶26, 277 Wis. 2d 698, 691 N.W.2d 388, and we may affirm such a decision "on grounds different than those relied on by the trial court," *see Vanstone v. Town of Delafield*, 191 Wis. 2d 586, 595, 530 N.W.2d 16 (Ct. App. 1995).

¶28   "An evidentiary error is subject to a harmless error analysis and requires reversal or a new trial only if the improper admission of evidence has affected the substantial rights of the party seeking relief." *State v. Britt*, 203 Wis. 2d 25, 41, 553 N.W.2d 528 (Ct. App. 1996). Under this test, this court "will reverse only where there is a reasonable possibility that the error contributed to the final result." *Id.* Stated differently, an error "is harmless if it is 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" *State v. Hunt*, 2014 WI 102, ¶26, 360 Wis. 2d 576, 851 N.W.2d 434 (citations omitted). This analysis "presents a question of law for our independent review." *Nelson*, 355 Wis. 2d 722, ¶18.

¶29   To "aid" in a harmless error analysis, our supreme court set forth a "non-exhaustive list of factors" for consideration:

> the frequency of the error; the importance of the erroneously admitted evidence; the presence or absence of evidence corroborating or contradicting the erroneously admitted evidence; whether the erroneously admitted evidence duplicates untainted evidence; the nature of the defense; the nature of the State's case; and the overall strength of the State's case.

*Id.*, ¶45 (citation omitted). However, "the purpose of harmless error review … is concerned with the accuracy of the verdict." *Id.*, ¶47.

¶30   In considering these factors, we note that erroneously admitted evidence of specific instances of violence by Howard occurred three times—when the State elicited the evidence from T.H. regarding incidents against her and two other women with whom Howard had been involved. There was no other evidence corroborating or contradicting this evidence, nor did this evidence duplicate untainted evidence. Howard's theory of defense was that he had accidentally

injured P.M.H., so this evidence relating to prior violent incidents countered that defense.

¶31 However, we conclude that these factors had a minimal effect when compared to the overall strength of the State's case against Howard. First, Howard admitted that he had injured P.M.H. while doing exercises with her. Even though he claimed it was an accident, Eisner testified that that she had shown Howard the proper way to do the exercises with P.M.H. so that she would not be injured. Even more compelling was Dr. Sheets' testimony regarding her examination of P.M.H. and her conclusions regarding the intentional nature of P.M.H.'s injuries. Furthermore, there was evidence that Howard had previously been convicted for child abuse, which was properly admitted and is not being challenged on appeal.

¶32 In making the determination as to whether an error is harmless, "we weigh the effect of the inadmissible evidence against the totality of the credible evidence supporting the verdict." *Britt*, 203 Wis. 2d at 41. We conclude that the totality of the credible evidence in this case is sufficient such that the jury would have convicted Howard without the erroneously admitted evidence of specific instances of character evidence. *See Nelson*, 355 Wis. 2d 722, ¶51. Therefore, the trial court's error in admitting that evidence was harmless. *See id.* Accordingly, we affirm Howard's judgment of conviction.

> *By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.