Larry L. GEORGE, Petitioner-Respondent,†

v.

David H. SCHWARZ, Respondent-Appellant.

Court of Appeals

*No. 00–2711. Submitted on briefs January 12, 2001.—Decided February 28, 2001.*

## 2001 WI App 72

(Also reported in 626 N.W.2d 57.)

†Petition to review denied.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Eileen W. Pray*, assistant attorney general, and *James E. Doyle*, attorney general.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Len Kachinsky* of *Kachinsky & Petit Law Offices*, Neenah.

Before Brown, P.J., Anderson and Snyder, JJ.

¶ 1.    ANDERSON, J.    The State of Wisconsin was granted leave to appeal the decision of the trial court that the Division of Hearings and Appeals (DHA) was bound by the guidelines of the Department of Corrections's (DOC) Probation and Parole Operations Manual for establishing the period of reincarceration after parole revocation. The State also challenges the trial court's decision to reduce Larry L. George's reincarceration from eight years and eighteen days to nineteen months. We agree with the State and reverse

and remand. We conclude that the trial court exceeded its limited authority as a certiorari court when it reduced George's period of reincarceration. We also conclude that the DOC is without statutory authority to issue administrative rules that bind the DHA in the performance of its duties as a neutral and detached hearing examiner.[1]

## FACTS AND PROCEDURAL HISTORY

¶ 2. George was originally convicted of sexual assault and sentenced to sixteen years in prison on March 31, 1986.[2] He was released on discretionary parole on May 30, 1995, but was placed in custody four months later for investigation of possible violations of the rules of parole. George was released from custody and resumed his parole status approximately ten days later. On January 5, 1996, he absconded from parole and his whereabouts were unknown for more than thirty-three months. After George was located and placed in custody, his parole agent recommended revocation of his parole based upon nine alleged violations

[1] On January 26, 2001, Larry L. George filed a pro se motion to dismiss asserting that this appeal was authorized by the DOC rather than by David H. Schwarz, Administrator of the DHA, and, as an unnamed party, the DOC is without authority to prosecute this appeal. George's motion is denied; any person aggrieved from a trial court order or judgment may appeal. *Koller v. Liberty Mut. Ins. Co.*, 190 Wis. 2d 263, 266, 526 N.W.2d 799 (Ct. App. 1994). The DOC is aggrieved because the trial court's decision, reducing George's incarceration time, was contrary to the DOC's considered recommendation for reincarceration time.

[2] Two counts of second-degree sexual assault and one count of intimidating a witness were read in for sentencing purposes. The victim was a fourteen-year-old male.

of the rules of parole. The agent originally recommended that George be reincarcerated for seven years; however, her supervisor increased the recommendation to eight years and eighteen days, the total balance of the original sentence. The supervisor believed that the maximum sentence was warranted because of George's underlying offense and the seriousness of the violations prompting revocation.

¶ 3.　A parole revocation hearing was held on February 11, 1999, and the administrative law judge (ALJ) issued a decision on March 25, 1999. The ALJ found that George had committed seven of the nine alleged violations of the rules of parole and imposed the maximum remaining sentence of eight years and eighteen days. George filed a petition for a writ of certiorari that was quashed by the trial court on July 9, 1999. George argued that the Probation and Parole Operations Manual established rules to be followed in determining the amount of time to be recommended for reincarceration. According to George, the recommendation that he serve the maximum time remaining on his sentence—Category 3—was required by the operations manual only because the agent alleged that George had committed a sexual assault while on parole, and since the ALJ held that no sexual assault had been committed, there was no evidence to support the recommendation that George be reincarcerated for eight years and eighteen days. George also argued that the ALJ was bound by the operations manual and he erred when he did not reduce the period of reincarceration because the alleged sexual assault had not been proven. George asserted that he belonged in the category—Category 1—that did not require reincarceration. The trial court found that the operations manual only provided guidelines and there was

sufficient evidence to support the determination that George be reincarcerated for the maximum period of time.

¶ 4. While George's appeal from the decision of the trial court was pending before this court, he filed a motion for reconsideration before the trial court. The trial court denied the motion because the issue had already been decided and the case was pending before this court. We remanded the appeal to the trial court on December 28, 1999, with directions to consider George's motion for reconsideration.[3] A hearing on George's second motion for reconsideration was conducted on January 24, 2000. The trial court held that it could not make a finding that George belonged in Category 1 and reduced the amount of time George was ordered to serve. The court did remand the case to the ALJ to specify the reason why George was placed in Category 3 and sentenced to the maximum period of reincarceration.

¶ 5. The ALJ issued a clarification and additional findings of fact on February 7, 2000. First, the ALJ explained that the operations manual is an internal document providing guidelines for probation and parole agents and is not binding on the DHA. The ALJ then made additional findings of fact to support the maximum period of incarceration. The ALJ held that the underlying sexual assault George was sentenced on in 1986 and his multiple violations of the rules of parole required the maximum period of reincarceration.

¶ 6. On February 14, 2000, the trial court denied George's motion for reconsideration. The court implicitly found that the ALJ was not bound to apply the operations manual. The court also found that there was

---

[3] *George v. Schwarz*, No. 99–2085, order dated December 28, 1999.

456

sufficient evidence to support imposing the maximum period of reincarceration.

¶ 7.    George filed a notice of appeal and, while the appeal was pending, he filed a third motion for reconsideration, again challenging his placement in the appropriate category of the operations manual. We held that the trial court had the authority to entertain George's third motion for reconsideration, and a hearing was held on September 1, 2000.[4]

¶ 8.    The trial court changed course and held that under the spirit of *State ex rel. Anderson-El v. Cooke*, 2000 WI 40, 234 Wis. 2d 626, 610 N.W.2d 821, the ALJ from the DHA was bound by the operations manual. The court concluded that the ALJ's findings were insufficient to place George in Category 3 of the operations manual and justify imposing the maximum period of reincarceration. At George's request, the court placed him at the midpoint of Category 1 and determined that he should only be reincarcerated for nineteen months, which exceeded the time he had served since he had been placed in custody for absconding.

¶ 9.    The State appealed from the trial court's order and sought a stay of the order releasing George. We granted the request for a stay pending appeal, expedited the briefing schedule and limited the briefing to three issues: (1) whether the ALJ was bound by the DOC's Probation and Parole Operations Manual; (2) whether the ALJ's findings support a maximum period of reincarceration; and (3) whether the circuit court overstepped its authority in this certiorari action

---

[4] *George v. Schwarz*, Nos. 99–2085 and 00–0474, order dated August 3, 2000.

by amending the period of reincarceration and reclassifying George.[5]

## STANDARD OF REVIEW

¶ 10. Our review is de novo. We owe no deference to any of the circuit court's rulings as we directly review the ALJ's decision. *State ex rel. Macemon v. McReynolds*, 208 Wis. 2d 594, 596, 561 N.W.2d 779 (Ct. App. 1997). For the first two issues, we nonetheless owe deference to the ALJ's decision and we are limited to the following four inquiries: (1) whether the ALJ kept to his or her jurisdiction; (2) whether the ALJ acted according to law; (3) whether the ALJ's action was arbitrary; and (4) whether the evidence provides reasonable support for the decision. *Id.* The evidentiary test on certiorari review is the substantial evidence test, under which we determine whether reasonable minds could arrive at the same conclusion that the ALJ reached. *State ex rel. Ortega v. McCaughtry*, 221 Wis. 2d 376, 386, 585 N.W.2d 640 (Ct. App. 1998). The facts found by the ALJ are conclusive if supported by "any reasonable view" of the evidence, and we may not substitute our view of the evidence for that of the ALJ. *Id.*

¶ 11. The third issue—whether the circuit court exceeded its authority in reducing George's reincarceration time—is a question of law that we review de novo.

---

[5] *George v. Schwarz*, No. 00–2711, order dated October 13, 2000.

## AUTHORITY OF THE CIRCUIT COURT

¶ 12.   We first will consider whether the circuit court overstepped its authority when it reclassified George from Category 3 to Category 1 and reduced the period of reincarceration from eight years and eighteen days to nineteen months. As a general rule, a certiorari court may affirm or reverse the action of the ALJ and, in limited circumstances, it may remand the case, *see Snajder v. State*, 74 Wis. 2d 303, 311–12, 246 N.W.2d 665 (1976), but it "cannot order the [ALJ] to perform a certain act." *State ex rel. Richards v. Leik*, 175 Wis. 2d 446, 455, 499 N.W.2d 276 (Ct. App. 1993).

¶ 13.   We recently reviewed the limited nature of the authority of a certiorari court:

> The scope of certiorari extends to all questions of jurisdiction, power and authority of the inferior tribunal to do the action complained of and all questions relating to the irregularity of the proceedings. In short, the issue is limited to whether the tribunal has kept within the boundaries prescribed by the express terms of the ordinance, statute or law of this state. In its essence, circuit court review is supervisory in nature. The issue is the regularity of the inferior tribunal's proceeding.

*Winkelman v. Town of Delafield*, 2000 WI App 254, ¶ 5, 239 Wis. 2d 542, 620 N.W.2d 438 (citations omitted). The limited role of the certiorari court prevents it from reexamining the evidence presented to the ALJ.

¶ 14.   Throughout these proceedings, George has challenged the sufficiency of the evidence supporting the ALJ's conclusion that the maximum period of rein-

carceration was warranted. George's complaint required the circuit court to consider whether the evidence was such that the ALJ might reasonably have made the determination in question; certiorari is not a de novo review. *See Van Ermen v. DHSS*, 84 Wis. 2d 57, 64, 267 N.W.2d 17 (1978). The court's inquiry was limited to whether there was substantial evidence to support the ALJ's decision. *Id.* It was the province of the ALJ, not the circuit court, to weigh the evidence in this case. *Id.* The circuit court erred when it reclassified George and reduced the period of reincarceration because the court cannot substitute its view of the evidence for that of the ALJ. *Id.*

### PROBATION AND PAROLE OPERATIONS MANUAL

¶ 15. Since the revocation, George has argued that the ALJ erred when he failed to impose a period of reincarceration consistent with the Probation and Parole Operations Manual. George contends that the use of the operations manual is mandatory in all revocation hearings conducted by ALJs from the DHA. Although the circuit court initially ruled that the operations manual was only a guideline, at the hearing on George's third motion for reconsideration, the circuit court concluded that under the spirit of *Anderson-El*, the ALJ was required to apply the reincarceration guidelines from the operations manual.

¶ 16. The operations manual is an internal working document for the employees of the DOC's Probation and Parole division. The portion of the operations manual this case is concerned with supplies procedures for recommending reincarceration as a result of parole revocation. Under these procedures, a parole agent must engage in a two-step process to arrive at a recom-

mendation of how much reincarceration time should be recommended.

¶ 17.   The first step requires the agent to apply the penalty schedule to determine the range of reincarceration. The penalty schedule is a table with three categories based on the amount of time available for reincarceration. Category 1 covers minor violations not involving property or human safety and permits reincarceration of ten to thirty-five percent of the remaining sentence. Category 2 includes misdemeanor assaults and felony property crimes and permits reincarceration of thirty-five to seventy-five percent of the remaining sentence. Category 3 includes crimes against a person and use of a weapon and permits reincarceration of seventy-five to one hundred percent of the remaining sentence. The schedule also includes aggravating factors and mitigating factors that may be used to adjust the recommendation.

¶ 18.   The second step of the procedure requires the agent to apply criteria from the Wisconsin Administrative Code to determine where the reincarceration recommendation should be within the range of each category. In George's case, there are five factors that the agent is required to consider:

1.   The nature and severity of the original offense;

2.   The client's institutional conduct record;

3.   The client's conduct and behavior while on parole;

4.   The period of reincarceration that would be consistent with the goals and objectives of field supervision under ch. DOC 328; and

5.   The period of reincarceration that is necessary to protect the public from the client's further crimi-

nal activity, to prevent depreciation of the seriousness of the violation or to provide a confined correctional treatment setting which the client needs.

WIS. ADMIN. CODE § DOC 331.14(3)(b).

¶ 19. Although *Anderson-El* supports the proposition that an administrative agency must abide by its own rules, *Anderson-El,* 2000 WI 40 at ¶ 17, it does not support the proposition that an ALJ from the DHA is bound to follow the operations manual. Assuming arguendo that the operations manual is an administrative rule, there are three reasons why it is not binding upon the DHA and its ALJs.

¶ 20. First, an administrative agency cannot regulate the activities of another agency or promulgate administrative rules to bind another agency unless it has express statutory authority to make and enforce such a rule. "[A]n administrative agency has only those powers as are expressly conferred upon it or which may be fairly implied from the statutes under which it operates, and as a consequence, it cannot promulgate any rule which is not expressly or impliedly authorized by the legislature." *Brown County v. HSS Dep't,* 103 Wis. 2d 37, 48, 307 N.W.2d 247 (1981). The DOC has primary responsibility to administer parole matters. WIS. STAT. § 301.03(3) (1999–2000).[6] The DOC also has responsibility to revoke parole in uncontested cases where the individual has waived the right to a final revocation proceeding. *Id.* The DOC is within its statutory authority to have an operations manual that

[6] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

includes guidelines on recommending periods of reincarceration.[7]

¶ 21.   The DHA is not part of the DOC; it is part of the Department of Administration. WIS. STAT. § 15.103(1). The DHA has sole responsibility for the decision to revoke parole in all contested cases, WIS. STAT. § 301.03(3), and in the determination of the period of reincarceration, WIS. STAT. § 302.11(7)(a).

¶ 22.   The legislature has unmistakably delegated duties relating to parole revocation to two different agencies:

> Every paroled prisoner remains in the legal custody of the department [of corrections] unless otherwise provided by the department. If the department alleges that any condition or rule of parole has been violated by the prisoner, the department may take physical custody of the prisoner for the investigation of the alleged violation. If the department is satisfied that any condition or rule of parole has been violated it shall afford the prisoner such administrative hearings as are required by law. Unless waived by the parolee, the final administrative hearing shall be held before a hearing examiner from the division of hearings and appeals in the department of administration who is licensed to practice law in this state. The hearing examiner shall enter an order revoking or not revoking parole. Upon request by either party, the adminis-

---

[7] WISCONSIN STAT. § 301.03(3) provides in part that the DOC shall:

Administer parole, extended supervision and probation matters, except that the decision to grant or deny parole to inmates shall be made by the parole commission and the decision to revoke probation, extended supervision or parole in cases in which there is no waiver of the right to a hearing shall be made by the division of hearings and appeals in the department of administration.

trator of the division of hearings and appeals shall review the order. . . . If the parolee waives the final administrative hearing, the secretary of corrections shall enter an order revoking or not revoking parole. If the examiner, the administrator upon review, or the secretary in the case of a waiver finds that the prisoner has violated the rules or conditions of parole, the examiner, the administrator upon review, or the secretary in the case of a waiver, may order the prisoner returned to prison to continue serving his or her sentence, or to continue on parole.

WIS. STAT. § 304.06(3). Under this delegation of duties, the DOC lacks the statutory authority to make and enforce rules binding on the DHA regarding the revocation of parole in contested cases or the period of reincarceration to be served in contested cases.[8]

¶ 23. Second, to bind the DHA to rules in the operations manual would seriously undermine the discretion accorded the DHA in contested parole revocation matters. The Wisconsin Supreme Court has had occasion to discuss the discretion given the DHA in *Bartus v. DHSS*, 176 Wis. 2d 1063, 501 N.W.2d 419 (1993):

---

[8] George asserts that the requirement that the administrator of the DHA consult with the DOC before promulgating "rules relating to the exercise of the administrator's and the division's powers and duties," WIS. STAT. § 301.035(5), binds the DHA to the rules promulgated by the DOC in the Probation and Parole Operations Manual. George's argument is far from persuasive. The requirement that the administrator of the DHA confer with the DOC is not an expression of legislative intent that the DHA is bound by the DOC's rules. In fact, § 301.035(5) explicitly reserves to the administrator of the DHA the exclusive authority to make rules concerning the DHA's powers and duties to revoke parole and order periods of reincarceration.

> Past decisions of this and other courts indicate the care with which . . . the Division of Hearings and Appeals are expected to exercise their discretionary authority during these proceedings. "Discretion" includes not only "the process of decision making on the basis of the relevant facts but also requires that the decision be consonant with the purposes of the established law or other guides to discretion. . . ."
>
> We conclude that these well-established standards for exercising judicial discretion in the sentencing process apply with equal force to the administrator's exercise of discretion during revocation proceedings.

*Id.* at 1080.

¶ 24.   Just as sentencing is the trial judge's sole responsibility, the decision to impose reincarceration time is the DHA's sole responsibility. In exercising that responsibility, both are required to engage in "reasoning based on facts that are of record or that are reasonably derived by inference from the record, and a conclusion based on a logical rationale founded upon proper legal standards." *State v. Wagner*, 191 Wis. 2d 322, 332, 528 N.W.2d 85 (Ct. App. 1995). In exercising that responsibility, both are required to independently arrive at an appropriate disposition. They are not to blindly accept or adopt sentencing or reincarceration recommendations from any particular source. *See State v. Johnson*, 158 Wis. 2d 458, 465, 463 N.W.2d 352 (Ct. App. 1990). They may accept recommendations only if they can independently conclude that the recommendations are appropriate in light of the acknowledged goals of sentencing and parole revocation as applied to the facts of the case. *See id.* Accordingly, to require the DHA to follow the reincarceration guidelines of the operations manual would strip it of all discretion and make it nothing more than a rubber stamp.

¶ 25.   Finally, due process requires that a person subject to parole revocation appear before a neutral and detached hearing officer. *State v. Horn*, 226 Wis. 2d 637, 653, 594 N.W.2d 772 (1999). The DHA would be neither neutral nor detached if it were required to accept the reincarceration recommendation of the agency charged with prosecuting a person's parole revocation.

### RECOMMENDED PERIOD OF REINCARCERATION

¶ 26.   As we previously noted, the limited role of the certiorari court is to review whether the DHA kept within the boundaries prescribed by the laws of this state. *Winkelman*, 2000 WI App 254 at ¶ 5. George complains that the evidence is insufficient to support the DHA's imposition of the maximum amount of reincarceration time. This complaint requires the certiorari court to consider whether the evidence at the revocation hearing provides reasonable support for the DHA's decision. *Macemon*, 208 Wis. 2d at 596.

> When the sufficiency of the evidence is challenged, we are limited to the question of whether there is substantial evidence to support the department's decision. This is described as a "low burden of proof." Substantial evidence is the "quantity and quality of evidence which a reasonable [person] could accept as adequate to support a conclusion." However, assigning weight to the evidence in a revocation hearing is the province of the department.

*State ex rel. Washington v. Schwarz*, 2000 WI App 235, ¶ 17, 239 Wis. 2d 443, 620 N.W.2d 414 (citations omitted).

¶ 27. At the original revocation hearing, the ALJ found that George had committed seven violations of the rules of parole, including (1) recruiting another parolee to intimidate a third person to pay a debt to George; (2) forcing the third person into a car against his will; (3) absconding for a period of thirty-three months; (4) associating with a minor; (5) having more than twenty credit cards in another name in his possession; (6) providing false information to the FBI; and (7) consuming alcoholic beverages. In imposing the maximum period of reincarceration, the ALJ also considered the original offense of second-degree sexual assault of a fourteen-year-old male in violation of WIS. STAT. § 940.225(2)(e) (1985–86). The ALJ provided the following reasoning for imposing reincarceration of eight years and eighteen days:

> [George] demonstrates a willingness to take advantage of anybody or any situation that presents itself to him. He has learned very little from his imprisonment and subsequent supervision. A continuation of supervision would unduly depreciate the seriousness of his behavior and would subject the public to an unreasonable risk of further criminal activity in the future. He is in need of treatment. That treatment can most effectively be provided in a confined setting.

¶ 28. In response to the order of the circuit court to clarify why the maximum period of reincarceration was imposed, the ALJ stated that he considered recruiting another parolee to intimidate a third person to pay a debt to George and forcing the third person into a car against his will to be crimes against a person. The ALJ also considered George's multiple violations to be aggravating factors.

¶ 29. We have independently reviewed the entire record in this case and paid particular attention to the Return to the Writ of Certiorari. We agree with the ALJ that George is guilty of parole rules violations that would constitute crimes against persons. We conclude that the evidence available to the ALJ at the hearing and to the administrator of the DHA on the appeal overwhelmingly supports the conclusion that any period of reincarceration short of the maximum would unduly depreciate the seriousness of George's original criminal conduct and multiple rules violations.

## CONCLUSION

¶ 30. We reverse and remand with directions to reinstate the DHA's original order that George be reincarcerated for a period of eight years and eighteen days for three reasons.[9] First, the circuit court erred when it went beyond the limited scope of a certiorari court's authority and reduced George's reincarceration from eight years and eighteen days to nineteen months. Second, the circuit court also erred when it held that the DHA was bound to follow the Probation and Parole Operations Manual. In order to remain a neutral and

---

[9] While this appeal was pending, George filed a pro se motion for remand to the trial court to consider: (1) whether a parolee's conduct after absconding and the issuance of a parole revocation order can be considered at a contested hearing to revoke parole, and (2) whether one or more witnesses testified untruthfully at the revocation hearing. We denied George's motion. *State v. George*, No. 00–2711, order dated January 7, 2001. This decision does not address these issues. George can revisit these issues after remand, provided that they have been properly preserved.

detached hearing officer, the DHA retains the right to exercise its discretion in revocation hearings free from the guidelines found in the operations manual. Third, there is substantial evidence to support the DHA's conclusion that George's multiple parole rules violations warranted the maximum period of reincarceration.

*By the Court.*—Order reversed and cause remanded with directions.