775 N.W.2d 535 (2009)
2009 WI App 148
STATE of Wisconsin, Plaintiff-Respondent,
v.
Michael Lee WASHINGTON, Defendant-Appellant.
No. 2008AP2359-CR.
Court of Appeals of Wisconsin.
Submitted on Briefs May 29, 2009.
September 2, 2009.
*536 On behalf of the defendant-appellant, the cause was submitted on the briefs of Christopher L. Wiesmueller of Kuchler and Cotton Law Offices, Waukesha.
On behalf of the plaintiff-respondent, the cause was submitted on the brief of Eileen W. Pray, assistant attorney general, and J.B. Van Hollen, attorney general.
Before NEUBAUER, P.J., ANDERSON and SNYDER, JJ.
¶ 1 SNYDER, J.
Michael Lee Washington appeals from a reconfinement order and an order denying his motion for postconviction relief. Washington asserts that he waived his final revocation hearing in reliance upon an agreement with the Department of Corrections (DOC) regarding a recommended term of reincarceration. He contends that the prosecutor breached the agreement by not following the DOC recommendation *537 at the reconfinement hearing.[1] Washington further argues the circuit court failed to properly weigh relevant sentencing factors; specifically, he contends the court did not give enough weight to the DOC recommendation. We reject both of Washington's arguments and affirm.

BACKGROUND
¶ 2 On March 18, 2005, a jury convicted Washington of Forgery-Uttering, a Class H felony under WIS. STAT. § 943.38(2) (2007-08).[2] The circuit court sentenced Washington to two years and six months of initial confinement followed by three years of extended supervision. On April 3, 2007, Washington was granted extended supervision status. On April 11, 2007, Washington began violating conditions of his extended supervision. A violation investigation report by DOC agent Vickee Ostrowski described several incidents wherein Washington failed to comply with the conditions of his release. On April 30, Ostrowski recommended referring Washington to a halfway house as an alternative to revocation. Washington absconded from the halfway house, failed to report his whereabouts, and was later arrested for obstructing an officer.
¶ 3 On August 30, 2007, Washington was taken into custody and Agent Ostrowski recommended revocation of his extended supervision. In a memorandum to the circuit court dated November 9, 2007, the DOC advised the court of its recommendation that Washington be reincarcerated for a period of one year, one month, and twenty-four days.[3] By memorandum dated December 13, Ostrowski advised the court that Washington had waived his right to a final revocation hearing on November 8.
¶ 4 A circuit court hearing for sentencing after revocation took place in January 2008. There, the prosecutor recommended two years and six months of reincarceration. Washington implored the circuit court to follow the DOC recommendation of thirteen months and twenty-four days, but acknowledged that the court "has some discretion in that." The court went over Washington's original conviction, the presentence investigation report, Washington's violations since being released on extended supervision, the competing recommendations by the parties, and the minimum amount of custody to promote rehabilitation. Based upon all of the factors, the court sentenced Washington to two years in prison with extended supervision to complete the balance of the original sentence.
¶ 5 Washington moved for postconviction relief. At the motion hearing, Washington argued that the DOC revocation hearing form does not warn the offender that the state will be free to recommend whatever term of reincarceration it sees fit, regardless of the recommendation provided by the DOC. He further asserted that the circuit court did not address all of the relevant factors prior to deciding on the *538 term of reincarceration. The court held that any challenge to the DOC revocation hearing form is an administrative matter, suggesting the matter was not properly before the court. Nonetheless, the court determined that it owed no deference to the DOC recommendation and that the form properly informed Washington of that fact. The court further stated that it was satisfied that it had considered all of the relevant sentencing factors and was "well aware of the facts of this case." The court denied Washington's motion for relief. Washington appeals.

DISCUSSION
¶ 6 Washington clarifies his appellate issues in his reply brief, stating that he is not challenging the administrative waiver of his revocation hearing.[4] Rather, his question is whether the prosecutor was "bound to follow the [DOC] recommendation at the reconfinement hearing." He also claims that the circuit court failed to properly consider mitigating factors or accord sufficient weight to the DOC's recommended term of reconfinement. He seeks a modification of the term of reincarceration imposed by the court.

The DOC Recommendation
¶ 7 We begin with Washington's characterization of his understanding with the DOC as a "plea agreement." A plea agreement is analogous to a contract and we draw upon contract principles in determining the rights of the parties to a plea agreement and whether there has been a breach. State v. Deilke, 2004 WI 104, ¶ 12, 274 Wis.2d 595, 682 N.W.2d 945. The question of whether the State's conduct breached the terms of the plea agreement is a question of law that we review de novo. State v. Howard, 2001 WI App 137, ¶ 15, 246 Wis.2d 475, 630 N.W.2d 244.
¶ 8 The State responds that no plea negotiations took place here and no plea agreement was in place. We agree. We note that while the record confirms the DOC recommended thirteen months and twenty-four days of reincarceration and that Washington waived his final revocation hearing, there is nothing to suggest that one served as consideration for the other. The State explains that when a person waives his or her revocation hearing, the DOC is required to "make a recommendation to the court concerning the period of time for which the person should be returned to prison." See WIS. STAT. § 302.113(9)(at). The DOC consults a "penalty schedule" and other criteria to arrive at an appropriate recommendation. See, e.g., George v. Schwarz, 2001 WI App 72, ¶¶ 17-18, 242 Wis.2d 450, 626 N.W.2d 57. We reject Washington's assertion that there was a plea agreement in place.
¶ 9 The DOC recommendation for reincarceration following revocation is more appropriately analogized to a presentence investigation report (PSI) at the original sentencing. See State v. Brown, 2006 WI 131, ¶ 24, 298 Wis.2d 37, 725 *539 N.W.2d 262. The securing of a PSI is an integral part of the sentencing function and is solely within the judicial function. Young v. State, 49 Wis.2d 361, 368, 182 N.W.2d 262 (1971). The purpose of a PSI is to assist the judge in selecting the appropriate sentence for the individual defendant. State v. Knapp, 111 Wis.2d 380, 384, 330 N.W.2d 242 (Ct.App.1983). The DOC does not function as an agent of either the State or the defense in fulfilling its PSI role but as an agent of the court in gathering information relating to a specific defendant. State v. Suchocki, 208 Wis.2d 509, 518, 561 N.W.2d 332 (Ct.App.1997), abrogated on other grounds by State v. Tiepelman, 2006 WI 66, ¶ 31, 291 Wis.2d 179, 717 N.W.2d 1. In Wisconsin, the entire sentencing process is to be a search for truth and an evaluation of alternatives and any advance understanding between the prosecutor and defendant must not involve any persons conducting a PSI for the court. Farrar v. State, 52 Wis.2d 651, 657, 191 N.W.2d 214 (1971).
¶ 10 To accept Washington's argument that the prosecutor is bound by a reconfinement recommendation from the DOC, we would have to accept that the district attorney's office is bound by the internal operating procedures of the DOC. That premise is incorrect. Cf. George, 242 Wis.2d 450, ¶ 20, 626 N.W.2d 57 (an administrative agency cannot regulate the activities of another agency). A DOC recommendation is not binding on the prosecutor at a reconfinement hearing. Consequently, Washington's argument that he had an agreement with the prosecutor for a specific recommendation fails, and his argument that the prosecutor breached any such agreement must likewise fail.

The Court's Consideration of Sentencing Factors
¶ 11 Washington next argues that the circuit court failed to consider proper sentencing factors and to weigh them appropriately. Washington's specific complaints are as follows: (1) the court failed to consider the "mitigating nature and severity of the underlying offense," (2) the court did not "acknowledge any of [Washington's] successes on supervision or treatment," and (3) the court did not consider Washington's "acceptance of responsibility for the allegations leading to revocation," as demonstrated by his waiver of the final revocation hearing.
¶ 12 A reconfinement hearing is akin to a sentencing hearing, and our review is limited to determining whether the circuit court exercised its discretion erroneously. State v. Walker, 2008 WI 34, ¶ 13, 308 Wis.2d 666, 747 N.W.2d 673. Our supreme court recently provided the following guidance on reconfinement:
In making a reconfinement decision, "we expect that circuit courts will usually consider [the recommendation from the DOC,] the nature and severity of the original offense, the client's institutional conduct record, as well as the amount of incarceration necessary to protect the public from the risk of further criminal activity, taking into account the defendant's conduct and the nature of the violation of terms and conditions during extended supervision.".... Other factors that may be relevant include "consideration of the defendant's record, attitude, and capacity for rehabilitation, and the rehabilitative goals to be accomplished by imprisonment for the time period in question in relation to the time left on the violator's original sentence."
Id., ¶ 17 (citations omitted). As we consider Washington's arguments, we are aided by the fact that the same circuit court judge presided over the original sentencing and the reconfinement hearing. We review the two sentencing proceedings on *540 a global basis, noting that the circuit court referred back to the original sentencing in its reconfinement rationale. See State v. Wegner, 2000 WI App 231, ¶ 7, 239 Wis.2d 96, 619 N.W.2d 289
¶ 13 First, Washington contends that the court did not consider the fact that his original crime was economic, not violent, and that it should have had a mitigating effect. At the reconfinement hearing, the court stated that:
The nature and severity of the original offense. While it's an economic crime, it's your record basically that's problematic here in terms of the sentence that was imposed originally and really what to do now. The amount of reincarceration that is necessary to protect the public from risk of further criminal activity I think is paramount here. Your past record as reflected by the pre-sentence report that's in the file includes a burglary, battery on [a] person in '84 where you got probation, misdemeanor theft in '84. Disorderly conduct, obstructing in '88. Possession of cocaine in '89. '90 theft. '90 disorderly conduct. Retail theft as a habitual offender in '91, you were on probation and got revoked and went to prison. Disorderly conduct as a habitual offender in '92. Possession of cocaine with intent to deliver in '92 amended from delivery, got put on probation and got revoked twice. '93 obstructing. '99 misdemeanor battery, jail. Then the uttering charge where you were sentenced. You have a burglary conviction on your juvenile record.
¶ 14 At the hearing on Washington's postconviction motion, the court added:
This is an unusual case. Mr. Washington it's clear was very manipulative. He took advantage of a gentleman who was trying to extend kindness to people and do public good, and Mr. Washington took clear advantage of this person. Because of his age he was vulnerable, and this is in my opinion a very severe offense in terms of victimization of someone who's vulnerable, elderly, and it was very serious. So I'm satisfied those factors were all considered and were in my mind at the time I was the original sentencing judge.
It is clear from the record that the court considered Washington's original offense, acknowledged it was economic, and placed it in context by reference to the victim and to Washington's record. Washington's assertion that the nature of his original offense was ignored is incorrect.
¶ 15 Next, Washington argues that the circuit court failed to consider Washington's successes on supervision and in treatment. Again, the record demonstrates otherwise. The court observed:
[Washington] gets released and within a short time he has problems here. The rules that are violated include using cocaine and marijuana on April 11th of '07 and on the 13th he failed to follow the electronic monitoring schedule and his whereabouts were unknown. He failed to follow the rules of the Transitional Living Place ... he failed to follow the electronic monitoring schedule ... he failed to report to his agent for an office visit ... he absconded from the AODA Halfway House ... [and] he gave a false name to police.
. . . .
Your attitude here is reallyI'm not aware of it other than your conduct, which I think speaks loudly here because you have basically chosen not to follow any of the programming they offered to you.
¶ 16 The court's review of Washington's violations while on extended supervision is exhaustive. If there were successes that Washington experienced, he does not identify them in his brief. At the hearing he did mention his completion of one phase of an AODA program, and explained that *541 some of his failures were simply a result of being associated with "somebody who was doing something wrong." In light of the number of violations of his conditions of release, Washington's assertions that he was successful on supervision are unpersuasive.
¶ 17 Finally, Washington contends that the circuit court did not properly weigh the importance of the DOC recommendation. He argues that the recommended term of reincarceration should have carried more weight and that his waiver of the final hearing should have been a credit to his willingness to accept responsibility for his actions. First, we observe that the weight given to sentencing factors is fully within the discretion of the circuit court. See Brown, 298 Wis.2d 37, ¶ 39, 725 N.W.2d 262. Next, we emphasize that WIS. STAT. § 302.113(9)(at) requires the DOC to make a recommendation concerning the period of reconfinement, but it does not require the court to follow it. "Although the DOC's recommendation may be helpful, and should be considered by the circuit court in a reconfinement decision, that recommendation is not entitled to any deference." Brown, 298 Wis.2d 37, ¶ 24, 725 N.W.2d 262.
¶ 18 "Courts are to identify the general objectives of greatest importance. These may vary from case to case. In some cases, punishment and protection of the community may be the dominant objectives. In others, rehabilitation of the defendant and victim restitution may be of greater import." State v. Gallion, 2004 WI 42, ¶ 41, 270 Wis.2d 535, 678 N.W.2d 197. Here, the court clearly considered the forgery-uttering offense a serious one that was perpetrated against a vulnerable victim. After an extensive review of relevant sentencing factors, it also concluded that "the minimum amount of custody on reconfinement to impose here in order to protect the public and based upon [Washington's] rehabilitation needs is to impose two years of reincarceration." We conclude that the court's imposition of a two-year term of reincarceration is well supported by its rationale.

CONCLUSION
¶ 19 When extended supervision is revoked and the DOC submits a recommended term of reincarceration for consideration at the reconfinement hearing, neither the prosecutor nor the circuit court is bound by that recommendation. The State is free to make an independent recommended term of reincarceration. The court is to craft a term of reincarceration that meets the general sentencing objectives it determines to be most important for each case. Accordingly, the reconfinement order and postconviction order of the circuit court are affirmed.
Orders affirmed.
NOTES
[1] The State asserts that Washington is precluded from making this argument on appeal because he did not object when the prosecutor made his recommendation before the circuit court. Generally, the failure to object is a "dispositive infirmity." State v. Grindemann, 2002 WI App 106, ¶ 27, 255 Wis.2d 632, 648 N.W.2d 507. We nevertheless choose to address the argument because it is likely to recur. See State ex rel. Krieger v. Borgen, 2004 WI App 163, ¶ 7, 276 Wis.2d 96, 687 N.W.2d 79 (in the interest of judicial economy, we may address issues that are likely to recur).
[2] All references to the Wisconsin Statutes are to the 2007-08 version.
[3] The maximum time available for Washington's reincarceration was three years and seven days.
[4] Some confusion is apparent with regard to whether Washington should have filed a petition for writ of certiorari rather than an appeal under WIS. STAT. § 809.30. The State asserts that, under WIS. STAT. § 302.113(9)(g), review of Washington's revocation of extended supervision "may be sought only by an action for certiorari." We suspect the confusion stems from Washington's reconfinement hearing argument that the DOC revocation hearing form provided inadequate warnings about the nonbinding nature of the DOC recommendation. As we read his arguments on appeal, Washington does not challenge the DOC decision to revoke his extended supervision or seek to undo his waiver of the final revocation hearing; rather, he seeks modification of the term of reconfinement. That issue is properly before us. See State v. Swiams, 2004 WI App 217, ¶ 4, 277 Wis.2d 400, 690 N.W.2d 452 (reconfinement after revocation is subject to review under § 809.30.).