Harlan RICHARDS, Plaintiff-Appellant,

v.

Alphonso GRAHAM, Defendant-Respondent.

STATE of Wisconsin EX REL. Harlan RICHARDS, Petitioner-Appellant,

v.

Mark HEISE, Respondent-Respondent.

Court of Appeals

*Nos. 2009AP473, 2009AP1611. Submitted on briefs June 17, 2009 (2009AP473). December 14, 2009 (2009AP1611) —Decided June 16, 2011.*

2011 WI App 100

(Also reported in 801 N.W.2d 821.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Harlan Richards*, pro se, and *Kendall W. Harrison* and *Jennifer L. Gregor* of *Godfrey & Kahn, S.C.*, Madison.

On behalf of the respondent-respondent, the cause was submitted on the briefs of *Abigail C.S. Potts*, *Steven C. Kilpatrick*, and *David E. Hoel*, assistant attorneys general, and *J.B. Van Hollen*, attorney general.

Before Vergeront, P.J., Higginbotham and Sherman, JJ.

¶ 1. HIGGINBOTHAM, J. Harlan Richards appeals circuit court orders affirming a Parole Commission decision deferring his next parole review for twelve months, and a Program Review Committee (PRC) decision elevating his custody classification, which resulted in Richards' loss of work-release privileges and transfer to a higher security facility.[1] Richards' primary contention is that both decisions were arbitrary and unsupported by substantial evidence in the record. We

---

[1] These orders are before us in two separate appeals. We have consolidated these appeals for purposes of decision, and appointed Attorneys Kendall W. Harrison and Jennifer L. Gregor of Godfrey & Kahn, S.C. to represent Richards pro bono. We wish to thank Attorneys Harrison and Gregor for their service.

conclude the Parole Commission's decision was reasonable and supported by substantial evidence, but that the PRC's decision was arbitrary. We therefore affirm in part and reverse in part and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

¶ 2. Harlan Richards was sentenced to life in prison in 1984 after being found guilty of first degree murder with use of a dangerous weapon. Richards had previously served a sentence for manslaughter. In April 2008, the Parole Commission, chaired by Alfonso Graham, denied Richards parole and ordered a twelve-month deferment before his next parole review. Richards' last deferment had been ten months in length. Prior to the Parole Commission's April 2008 decision, Richards had been on minimum community custody and had been residing at a work-release center for two and one-half years.

¶ 3. As a result of the increase in his defer period from ten to twelve months, Richards was called before the Program Review Committee (PRC) of the Wisconsin Department of Corrections Bureau of Offender Classification and Movement for an early review of his security classification. Referencing the increased defer period, the PRC elevated Richards' risk rating from "low risk" to "moderate risk." Then, taking into account Richards' increased risk rating, the PRC elevated his custody classification from "minimum-community" to "minimum." A result of the change in custody classification was that Richards lost his work-release privileges and was transferred to a higher-security institution. Richards appealed to the Department of Corrections Bureau

179

of Offender Classification and Movement, Mark Heise, classification chief, which upheld the PRC's decision.

¶ 4. Richards filed separate actions for certiorari review in Dane County Circuit Court challenging the decisions of the Parole Commission and the PRC. The circuit court affirmed both decisions, and Richards now appeals.

## II. STANDARD OF REVIEW

■■

¶ 5. On a writ of certiorari, we review the decisions of the Parole Commission and the PRC, not those of the circuit court, and the scope of our review is identical to that of the circuit court. *State ex rel. Saenz v. Husz*, 198 Wis. 2d 72, 76–77, 542 N.W.2d 462 (Ct. App. 1995). Our review is limited to whether: (1) the agency kept within its jurisdiction; (2) it acted according to the law; (3) its action was arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) the evidence was such that it might reasonably make the order or determination in question. *State ex rel. Purifoy v. Malone*, 2002 WI App 151, ¶ 13, 256 Wis. 2d 98, 648 N.W.2d 1.

■■

¶ 6. "The evidentiary test on certiorari review is the substantial evidence test, under which we determine whether reasonable minds could arrive at the same conclusion" reached by the department. *George v. Schwarz*, 2001 WI App 72, ¶ 10, 242 Wis. 2d 450, 626 N.W.2d 57. The inmate has the burden of proving by a preponderance of the evidence that the actions of the agency were arbitrary and capricious. *See State ex rel. Johnson v. Cady*, 50 Wis. 2d 540, 550, 185 N.W.2d 306,

311 (1971). If the inmate fails to sustain this burden, the courts will not interfere with the agency's decision. *State ex rel. Cutler v. Schmidt*, 73 Wis. 2d 620, 623, 244 N.W.2d 230 (1976).

## III. DISCUSSION

¶ 7. Richards contends the Parole Commission's decision to increase his defer period from ten months to twelve months was arbitrary and unsupported by substantial evidence.[2] With respect to the PRC's decision to elevate Richards' security classification, Richards also argues that this decision was arbitrary and unsup-

[2] Richards also argues that claim preclusion barred the Parole Commission from increasing the length of his deferment absent an adverse change in circumstances because of a previous court decision involving him and the Parole Commission. We reject this argument. There are three requirements for claim preclusion to apply: "(1) an identity between the parties or their privies in the prior and present suits; (2) an identity between the causes of action in the two suits; and, (3) a final judgment on the merits in a court of competent jurisdiction." *Northern States Power Co. v. Bugher*, 189 Wis. 2d 541, 551, 525 N.W.2d 723 (1995).

The causes of action stated in the two suits are not identical. In *State ex rel. Richards v. Morgan*, Dane County Circuit Court Case No. 02–CV-2259, Richards challenged a July 1, 2002 decision of the Chairperson of the Parole Commission extending an already-decided eleven month deferment to a twenty-four month deferment. The Parole Commission voluntarily rescinded this decision and the matter was dismissed with prejudice. The case at hand concerns Richards' challenge to an entirely separate action by the Parole Commission years later, and thus there is no identity between the causes of action.

Because we reject Richards' claim preclusion argument, we need not address the State's argument that claim preclusion does not apply to Parole Commission decisions.

ported by the evidence, that he has a liberty interest in his community custody rating and work-release center placement, and that he was transferred based on the application of unpromulgated risk-rating guidelines which affected his private rights and interests.

¶ 8. In response, Graham and Heise (hereafter, the Commission and PRC, respectively) contend that these appeals are moot. Whether these appeals are moot presents a threshold issue which must be addressed before considering Richards' contentions on the merits.

## A. Mootness

¶ 9. Since seeking review of the Parole Commission and PRC decisions, Richards has received at least three subsequent hearings before the Parole Commission and at least two program reviews before the PRC. In the view of the Commission and PRC, Richards' claims are moot because he has already received the remedies to which he would be entitled should he prevail here: a new parole hearing and a new program review. The Commission and PRC note that, at a February 2010 hearing, the Parole Commission reduced Richards' deferment period to eight months and recommended that he be returned to work release.

¶ 10. Richards argues his claims are not moot because, despite the Parole Commission's February 2010 recommendation, he has not been restored to "minimum-community" custody status and has thus not been allowed to resume work release. We conclude the fact of Richards' subsequent hearings before the Parole Commission and the PRC do not render his claims moot.

182

■■

¶ 11. An issue is moot when a party seeks a determination that will have no practical effect on an existing legal controversy. *Racine v. J-T Enters. of Am., Inc.*, 64 Wis. 2d 691, 700, 221 N.W.2d 869 (1974). Appellate courts generally decline to decide moot issues. *State ex rel. Wis. Envtl. Decade, Inc. v. Joint Committee for Review of Administrative Rules*, 73 Wis. 2d 234, 236, 243 N.W.2d 497 (1976). Nevertheless, we will decide an issue, even if moot, when the issue will likely reoccur but will continue to evade appellate review because of the substantial time required for the appellate review process. *State ex rel. La Crosse Tribune v. Circuit Court for La Crosse County*, 115 Wis. 2d 220, 229, 340 N.W.2d 460 (1983). In *State ex rel. Treat v. Puckett*, 2002 WI App 58, 252 Wis. 2d 404, 643 N.W.2d 515, we held that an inmate's claim that the PRC incorrectly applied the risk-rating guidelines was not rendered moot simply because he had received another program review. We observed that the question of mootness in that case turned on "a determination of whether a decision in Treat's favor" on the merits "would afford him some relief that he ha[d] not already achieved by virtue of the subsequent program review." *Id.*, ¶ 19.

¶ 12. Similarly, a decision in Richards' favor on the merits may afford him relief that he has yet to receive in the subsequent PRC reviews. While the Parole Commission recommended in February 2010 that Richards be returned to work-release custody status, the PRC did not return him to work-release status.[3] Accordingly, Richards' claims are not moot, and we proceed to consideration of the merits.

---

[3] In fact, Richards received a second twelve-month deferment from the Parole Commission in January 2011, which triggered an early PRC review in which Richards' custody

## B. Parole Commission Decision

¶ 13. WISCONSIN ADMIN. CODE § PAC 1.06 (Oct. 2000) addresses parole consideration.[4] This section sets forth the criteria to be considered when determining whether to grant discretionary parole or to defer parole for a period of time. Section PAC 1.06(7) (Oct. 2000). WISCONSIN ADMIN. CODE § PAC 1.07(6) (Oct. 2000) states that "[t]he inmate shall be advised in writing of the decision to defer or recommend a grant of parole, the reasons for the decision and the next opportunity for parole consideration . . . ."[5]

¶ 14. Neither the rules nor the statutes provide a separate set of criteria the Commission is to apply when determining the length of a deferment. The only rule

classification was elevated from minimum to moderate. We granted Richards' motion to supplement the record with these decisions for the limited purpose of addressing the mootness issue. Neither these decisions nor any other Parole Commission or PRC action issued subsequent to the April 2008 actions are under direct review in this appeal.

[4] All references to the Wisconsin Administrative Rules are to the version in effect at the time of the 2008 Parole Commission and PRC determinations. In the case of Chapter PAC 1, the version in effect in 2008 was adopted in October 2000. *See* Wisconsin Administrative Register No. 538. Chapter PAC 1 was repealed and replaced in 2010. *See* Wisconsin Administrative Register, November 2010, No. 659 (eff. December 1, 2010).

[5] A deferral is "an action by a commissioner or commissioners following parole consideration, which denies discretionary parole for a specified period of time or until additional information can be obtained, after which the inmate becomes eligible for consideration for discretionary parole." WIS. ADMIN. CODE § PAC 1.03(3) (Oct. 2000). Discretionary parole means parole granted prior to the inmate's mandatory release date. Section PAC 1.03(5) (Oct. 2000).

referencing the length of a deferment provides that reconsideration of a denial of parole "shall not be deferred for longer than 12 months except with the written approval of the chairperson or the chairperson's designee."[6] WIS. ADMIN. CODE § PAC 1.06(2) (Oct. 2000). The Commission regards the defer period as part of its decision on parole suitability; inmates who are plainly not suited for discretionary parole will receive a longer deferment than those who are more likely to be paroled at a future hearing.

¶ 15. Here, the Parole Commission considered on April 1, 2008, whether Richards should be released on parole, and denied Richards parole and set his defer period at twelve months. In its decision, the Parole Commission noted that Richards had "successfully completed all offense related programs," that he had been housed at minimum security facilities for the past six years, and had been on work release in the community. Nonetheless, the Commission denied parole to Richards, emphasizing the violent nature of his offense: "The over-riding factor in reaching the decision today is that you have been responsible for killing two people, on two separate occasions, which results in you being viewed as a very dangerous individual." The Commission observed that, after completing a sentence for manslaughter in the killing of his brother, and a subsequent probationary sentence for delivery of LSD, Richards "committed [his] second offense involving the loss of life," stabbing his victim twenty-one times.

> In a psychological evaluation from 1995 you indicate both episodes as being justifiable self-defense but ap-

---

[6] A modified version of this requirement is now found at WIS. ADMIN. CODE § PAC 1.06(9) (Nov. 2010).

parently the jury did not see it that way in their conviction of you for 1st Degree Murder . . . .

In spite of you having accomplished many things in your life since being confined and seeming to be an intelligent, capable individual, it is felt you have not served sufficient time to address the issue of punishment and that any consideration of release at this time presents too great a risk to others.

¶ 16. Richards argues the Commission's decision to increase his defer period to twelve months was arbitrary and unsupported by substantial evidence. Richards argues that he had previously received ten- or eleven-month deferments, and that during his most recent ten-month deferment nothing negative came to light to justify a longer deferment. Richards notes that he had completed numerous programs, was given community custody and work release, earned positive work evaluations, and received no misconduct reports. He argues that the only reason for the Parole Commission's decision to deny his parole—the violent nature of his offense—had not changed since the previous hearing.

¶ 17. In short, Richards appears to suggest that a defer period may only be increased for misconduct, and because there is no evidence that Richards had engaged in misconduct, the increase in the defer period was unreasonable and arbitrary and not supported by the record. Therefore, according to Richards, the Commission had no legitimate basis to increase the defer period from ten months to twelve months. We disagree.

¶ 18. Richards provides no authority by way of department rules, statutes, or case law for the proposition that the Commission may issue a deferment that is longer than the previous deferment only when the inmate has engaged in misconduct during the defer period, and we are unaware of any such authority. As

186

we have explained, the rules set forth criteria to be considered in determining whether to grant parole or to defer parole reconsideration to a future date set by the Commission. However, separate standards applicable to setting the length of a deferment are not provided in the rules. The rules require only that, if parole is denied, the Commission set a date for parole reconsideration, and, if that date is more than one year from the denial of parole, written approval must be obtained from the Commission chairperson. *See* WIS. ADMIN. CODE §§ PAC 1.06(2), 107(1) (Oct. 2000).

¶ 19. Richards' argument assumes that the Commission must provide reasons separate from the reasons for denying parole when increasing the deferment period. However, the lack of a standard for setting a parole reconsideration date indicates that the reasons for the Commission's decision on deferring parole also serve as the reasons for the length of the deferment. The Commission appears to argue that the setting of a parole reconsideration date is a purely administrative decision, and, based on the absence of a separate standard for this determination, we agree. We conclude that the Commission's decision to set parole reconsideration on any date within one year of the denial of parole is an administrative decision addressed to the Commission's discretion.[7]

¶ 20. Here, the Commission's decision denying Richards parole was based on its determination that Richards had killed two people on two separate occa-

---

[7] Whether a deferment lasting more than one year in length is also purely administrative in nature is beyond the scope of this opinion. As noted, deferments longer than one year require written approval of the Commission chairperson. WIS. ADMIN. CODE § PAC 1.06(2) (Oct. 2000).

sions, which, in the Commission's view, made Richards a "very dangerous individual." The Commission determined that Richards required more time in prison for punishment and that releasing him at that time posed too great a risk to others. In light of Richards' conviction for first-degree murder with use of a dangerous weapon as a repeater and manslaughter, it was not unreasonable for the Commission to consider Richards' continuing dangerousness and whether he had served sufficient time in prison for punishment purposes. Even if, as Richards argues, "nothing had changed" in the ten months since his last parole hearing, the rules do not preclude the Commission from establishing a twelve-month defer period based on its current assessment of Richards' dangerousness in light of the violent nature of his offense. *Cf. Grennier v. Frank*, 453 F.3d 442, 445 (7th Cir. 2006) (observing that officials' current policy preferences have legitimate role in Parole Commission's discretionary decisions, and that these may change over time).

¶ 21. For the reasons discussed above, we conclude the Commission's decision to defer reconsideration of Richards' parole status for twelve months was reasonable and supported by the record.[8]

---

[8] Richards also argues he has a state-created, due process "liberty interest" in his community custody status and placement in a work-release center that was denied by the Commission. Assuming for purposes of argument that Richards had such a liberty interest, it was not denied by the Commission. The PRC, not the Commission, elevated Richards' security classification and placed him in a higher security institution. We do not address in this decision whether the PRC denied Richards' claimed liberty interest in his custody status because we reverse the PRC's decision on other grounds.

## C. Program Review Committee Decision

¶ 22. Having concluded the Parole Commission's decision was reasonable, we now turn to the PRC's decision to elevate Richards' custody classification.

¶ 23. Richards argues the Parole Commission's selection of a twelve-month defer period instead of a ten-month defer period led directly to the PRC's decision to change his custody classification from "minimum-community" to "minimum." Richards contends that the PRC's decision was arbitrary and unsupported by the record because the PRC relied exclusively on the Parole Commission's selection of a twelve-month deferment in elevating his "risk rating," an assessment tool used in determining custody classification, without explaining how the longer deferment impacted his risk rating.[9] Before addressing Richards' argument, we set

[9] The PRC's decision states in full:

Inmate appeared before PRC to re-evaluate custody, placement, and program issues since his last PRC. Case preparation occurred per s. 302.17. SW comments including offense details noted.

This is an early review. At age 54, he is serving 2nd incarceration. Prior record includes 3/73 manslaughter. Parole Commission gave inmate a D-12 with new PED of 5/20/09. Full board review 04/01/08 w unanumous [sic] decision for D-12. MR date is life and MD of life.

Moderate Risk Rating.

Program needs and participation have been reviewed by the SW. He completed Clinical Assessment, Anger Mangt, Wood Industries and Assoc. Deg College Program.

Since admission to A&E on 11/09/1984, he has received 0 minor and 0 major CR's. Medical code is moderate (7/15/03[)]. Dental code is ten.

ERP & CIP—excluded offense. SPN noted at OSCI. Inmate requests continued placement at SPCC in minimum community

forth the provisions of the administrative code relating to inmate program reviews and custody classification.

## 1. Administrative Rules and the Risk Rating Instructions

¶ 24. WISCONSIN ADMIN. CODE § DOC 302.14 (Nov. 2010)[10] requires the Department of Corrections to "monitor custody classification, risk rating, institution placement and program or treatment assignments for every inmate." Among the purposes of program reviews

custody or FMCI placement in minimum custody. He states that he will appeal parole action and custody evaluation. This is an early hearing due to parole commission action of D-12. I/M saw parole board on 3/18/087 [sic] and recv'd a no action. A full board was held on 4/01/08 and a unanimous decision was made resulting in a D-12. Based on D-12 I/M's risk rating on sentence structure elevated to moderate. SPCC Supt requested PRC hearing to examine risk rating, custody & placement issues.

Per ss. DOC 302.07 & 302.09, the Committee unanimously recommends minimum custody with transfer to PDCI; OCI, temp RGCI; DCI.

A 12 month recall is set. Recall and recommendation are based on: sentence structure, offense/offense history, positive instit. adj and PC action of D-12 (lifer).

Classification expectations are to: maintain positive institution adj., enroll in essential treatment when available and facilitate release planning.

Per s. DOC 302.18, inmate may appeal within 30 days of the inmate's receipt of the written decision. DCC area is 120.

[10] The applicable portions of Chapter DOC 302 of the Wisconsin Administrative Code in effect at the time of Richards' 2008 program review were adopted in 2002, *see* Wisconsin Administrative Register, January 2002, No. 553 (eff. February 1, 2002), and are identical to the current version of the code. *See* Wisconsin Administrative Register, November, 2010, No. 659 (eff. December 1, 2010).

is to assess the inmate's custody classification; review the inmate's adjustment, conduct and program participation; and evaluate the inmate's risk. WIS. ADMIN. CODE § DOC 302.15 (2), (6) and (7).

¶ 25. In determining an inmate's custody classification, the PRC may take into account considerations that include but are not limited to a set of fourteen factors listed in WIS. ADMIN. CODE § DOC 302.07. Among the listed factors at issue in this case are: the nature and seriousness of the offense; the inmate's criminal record; length of sentence; the inmate's performance in treatment or other programs; "[p]arole commission actions and stated expectations, and in the absence of stated expectations, the likelihood of a release during the review period"; and "[t]he results of specially designed and researched risk rating instruments developed to assist with the individualized and objective assessment of a custody classification or program and treatment assignments and placements." *See* § DOC 302.07(1), (2), (3) (10), (12) and (13).

¶ 26. A specially designed risk rating instrument developed by the Wisconsin Department of Corrections is the Risk Rating Instructions.[11] Risk Rating Instruc-

---

[11] Richards contends that the Risk Rating Instructions are unpromulgated administrative rules, and therefore cannot lawfully be used to alter Richards' custody classification. However, this action for certiorari review is not the proper proceeding for a challenge to the validity of an administrative rule. With few exceptions not applicable here, the exclusive means of judicial review of the validity of a rule or unpromulgated statement, policy or rule-like order is an action for declaratory judgment brought in the circuit court for Dane County. WIS. STAT. § 227.40(1) (2009–10); *Heritage Credit Union v. Office of Credit Unions*, 2001 WI App 213, 247 Wis. 2d 589, 634 N.W.2d 593 (judicial review requirement of § 227.40(1) encompasses any

tions for Risk Rating Forms DOC-113 and DOC-114 (Dec. 1991). The Instructions provide "guidelines for evaluating risks as an aid in classifying inmates of the Wisconsin Correctional System." *Id.* at i. The Instructions identify eight risk categories evaluators must consider in determining an inmate's overall risk, including current offense, offense history, and sentence structure, among others.[12] *Id.* The PRC assigns the inmate a risk rating of "high," "moderate" or "low" for each of the risk categories. *Id.* The Instructions recommend that an inmate's overall risk rating be set by the highest rating in any one of the eight risk categories; for example, if the inmate is rated a high risk in any one of the eight categories, he would be rated high risk overall. *Id.* at 44.

¶ 27. In the sentence structure category, the PRC applies a set of guidelines that vary based on the length of the inmate's sentence. *Id.* at 10–16. The guidelines for inmates like Richards who have committed the most serious offenses and are serving a life sentence recommend a low risk rating only when a pre-parole investigation [PPI] has been requested by the Parole Commission. *Id.* at 13–14.

## 2. Risk Rating Assessment

¶ 28. With the administrative rules and Risk Rating Instructions in mind, we examine the PRC's risk-

unpromulgated statements, policies or orders of an agency that meet the definition of a rule under Wis. Stat. § 227.01(13)).

[12] The eight risk categories are current offense, offense history, sentence structure, institution adjustment, escape history, emotional/mental health, program participation, and temporary facts. Inmate Risk Assessment DOC-114 (Rev. July 1994).

rating assessment of Richards, a determination relevant to the PRC's decision to elevate Richards' custody classification from minimum-community to minimum.

¶ 29. As noted, the PRC determined Richards' risk rating for sentence structure to be moderate, and determined his overall risk rating to be moderate, an increase from his prior risk rating of low. Our review of the PRC's record shows that Richards' risk rating of moderate for sentence structure was based solely on the Parole Commission's decision to set the deferral period at twelve months.

¶ 30. PRC staff prepared two documents for the PRC, an Inmate Risk Assessment and an appraisal of the request for a program review. The Risk Assessment lists the factors for setting the risk rating of moderate for sentence structure: "No PPI [pre-parole investigation] requested, DF-12 [twelve-month deferment] . . . MR: Life [mandatory release date of life]." The appraisal of the request for a program review states that Richards' sentence structure was rated moderate "due to [an] increase to D-12." The PRC's decision itself explains Richards' risk rating of moderate as follows: "Based on D-12 [twelve-month deferment] I/M's [inmate's] risk rating on sentence structure elevated to moderate," and, hence, his overall risk rating was rated as moderate. The PRC's decision did not reference Richards' lack of a PPI request and his life sentence.

¶ 31. Because the record shows that the PRC's elevation of Richards' risk rating to moderate was based solely on the Parole Commission's decision to set the deferral period at twelve months, we conclude that the risk-rating decision was arbitrary. The PRC did not explain in its decision how the length of Richards' deferment affected his security risk. Because, as the

Parole Commission argued and we agreed, the increase in the defer period from ten to twelve months was purely administrative, we see nothing obvious about the change that would suggest the need for an increase in Richards' risk assessment. Moreover, to the extent the Commission's reasons for extending Richards' defer period are the same as its reasons for denying him parole, we observe that the PRC did not reference these reasons in its decision.

¶ 32. The PRC argues it appropriately assessed Richards' risk rating because the Commission has not requested a PPI for Richards, and the Risk Rating Instructions suggest a low risk rating only for those inmates who have received a PPI request.[13] But there is no indication in the record that the PRC applied the Risk Rating Instructions in assessing Richards' level of risk. As noted, the PRC did not reference staff's additional reasons for a moderate risk rating, Richards' lack of a PPI request and his life sentence. The Risk Rating Instructions are advisory, not mandatory, and the PRC plainly chose not to apply the Instructions in this instance. Moreover, it is apparent that the PRC did not apply the Instructions in previous reviews, as it is undisputed that Richards had not received a PPI re-

---

[13] The State also argues his overall risk rating of moderate was supported by his rating in other categories, including current offense (first degree murder—high) and offense history (prior conviction for manslaughter—moderate). As stated above, however, the PRC relied only on the twelve-month deferment and did not rely on the advisory Risk Rating Instructions in determining Richards' risk rating. Moreover, it is apparent that the PRC did not rely on these portions of the Instructions when it had previously determined Richards was a low security risk because his ratings for current offense and offense history should have been the same in prior reviews.

quest when the PRC had previously assessed his risk rating as low.

### 3. Custody Classification

¶ 33. As noted, an inmate's risk rating is but one consideration relevant to establishing custody classification. In this case, however, the record shows that the PRC's arbitrary risk-rating determination was the lynchpin of its decision to elevate Richards' custody classification from minimum-community to minimum. We therefore conclude that the PRC's decision to elevate Richards' custody classification was also arbitrary.

¶ 34. The PRC argues that the Parole Commission's twelve-month deferment—which, again, the PRC arbitrarily relied on in raising Richards' risk rating—was but one part of the PRC's decision to elevate Richards' custody classification. The PRC notes that the decision states that its custody classification recommendation is based on not only the twelve-month deferment and sentence structure but also "offense/offense history" and "positive institut[ional] adj[ustment]." The record does not support this statement.

¶ 35. While the "nature and seriousness of the offense" and the "inmate's criminal record" are factors the PRC may consider in determining custody classification, *see* WIS. ADMIN. CODE § DOC 302.07(1) and (2), the PRC plainly did not rely on these factors in making its determination, as we have already explained. Moreover, as for positive institutional adjustment, this factor weighs against elevating Richards' custody classification based on Richards' lack of misconduct reports and completion of numerous prison programs.

¶ 36. Because the PRC's decision to elevate Richards' custody classification was based on its arbi-

trary risk-rating determination, we conclude the PRC's decision to elevate Richards' custody classification from minimum-community to minimum was arbitrary. Accordingly, we vacate the PRC's decision and remand for a new review.

## IV. CONCLUSION

¶ 37. In sum, we conclude the Parole Commission's decision establishing a twelve-month deferment was reasonable and supported by substantial evidence in the record, but that the PRC's decision elevating Richards' custody classification from minimum-community to minimum was arbitrary. We therefore affirm in part and reverse in part and remand for further proceedings consistent with this opinion.

*By the Court.*—Orders affirmed in part; reversed in part and cause remanded with directions.